[No. 25205. Department One. November 26, 1934.]

C. D'AMBROSIA, *Respondent*, v. ACME PACKING & PROVISION COMPANY, *Appellant*.[1]

*Robbins & Rickles,* for appellant.

*Wright & Wright (Felix Rea,* of counsel), for respondent.

[1]Reported in 37 P. (2d) 887.

MAIN, J.—By this action, the plaintiff sought injunctive relief, and also damages. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the plaintiff was entitled to relief in both of the respects demanded. From the judgment entered granting an injunction and awarding damages to the plaintiff in the sum of one hundred sixty dollars, the defendant appeals.

The respondent, C. d'Ambrosia, owns two tracts of land, which is market garden land, a short distance south of the city of Seattle, in the Duwamish river valley. One tract comprises about twelve acres, and the other about eight. To the east of this land is a public highway, along the west side of which is what is referred to as a ditch or a depression in the ground, due to the breaking down of a box drain that was put in many years ago. The appellant, Acme Packing & Provision Company, is a corporation, and owns and operates a slaughter house east of the highway and across the road from the respondent's land.

In the year 1925, the appellant constructed a high board fence on the westerly side of the highway, but east of the ditch, so that the stock unloaded from the cars could be driven down to the feeding pens back of the fence, and thus not be distributed over the traveled portion of the highway. In December, 1933, there was a heavy rainfall, and the water in the appellant's feeding pens rose to a height of approximately eighteen inches. To relieve this situation, it placed a pump upon the highway and a twenty-inch pipe leading to the Duwamish river. The water was pumped off of the appellant's property, conveyed through the pipe, and, as first operated, was discharged upon the respondent's land, and cut away approximately ten cubic yards thereof. After this,

the pipe was moved farther to the east, and did not discharge the water upon the land of the respondent.

January 29, 1934, the respondent brought the present action to require the appellant to remove the pump and pipe, and also the fence from the highway. He sought damages for the land washed away, and for the loss of an early crop upon a small portion of the land. February 1, 1934, the appellant answered the complaint and show cause order which had been issued at the time the complaint was filed, and the case was set for hearing on February 21st. Prior to the trial, the appellant had removed the pump and the pipe from the highway, and these are no longer involved in the action.

During the trial and before the respondent's evidence had been concluded, the appellant asked leave to amend its answer and set up an agreement relative to the fence, which request was refused, and the ruling thereon presents the first question to be determined. Whether the amendment should have been permitted rested in the discretion of the trial court, and the exercise of that discretion will not be disturbed upon appeal, in the absence of a showing of abuse thereof. *International Development Co. v. Clemans,* 59 Wash. 398, 109 Pac. 1034; *State ex rel. Murphy v. Coleman,* 71 Wash. 15, 127 Pac. 568.

In this case, there was no abuse of discretion on the part of the trial court in refusing the amendment. The cause was an emergency one. It had been set for trial approximately three weeks before. This would seem to have been ample time for the appellant, in the exercise of reasonable diligence, to ascertain whether there had been an agreement relative to the fence. Cases which hold that the trial court did not abuse its discretion in permitting an amendment to a pleading during the trial do not support the appellant's contention in

this case that there was an abuse of discretion. The ruling of the trial court on the application to amend will not be disturbed.

The next question is whether the trial court erred in ordering the removal of the fence which was upon the public highway. Rem. Rev. Stat., § 9913 [P. C. § 9131-78], provides that it is a public nuisance to obstruct or encroach upon a public highway. Section 9921 [P. C. § 9131-75] provides that any private person may maintain a civil action for a public nuisance, if it is specially injurious to him. An owner of property abutting upon a highway has such a special interest therein as entitles him to maintain an action for the removal of an obstruction thereon.

In *Reed v. Seattle*, 124 Wash. 185, 213 Pac. 923, 29 A. L. R. 446, it was said:

"But it is alleged that the appellants are the owners of property abutting upon the highway and that the obstruction is in the highway immediately in front of their property. Under a long line of decisions of this court, this is a sufficient special interest to entitle a property holder to maintain the proceeding."

The cases of *Brazell v. Seattle*, 55 Wash. 180, 104 Pac. 155, and *Humphrey v. Krutz*, 77 Wash. 152, 137 Pac. 806, and others that might be cited, are to the same effect.

The fact that the erection of the fence was a convenience to the public does not justify its erection and continued maintenance in the highway. *Motoramp Garage Co. v. Tacoma*, 136 Wash. 589, 241 Pac. 16, 42 A. L. R. 886. The fact that the fence had been upon the highway for a considerable number of years did not establish a right to maintain it there.

In 20 R. C. L., p. 498, it is said:

"The rule is universally recognized that prescription or lapse of time cannot be relied on to establish a right to maintain a public nuisance. And in every

jurisdiction save one the courts have denied the defense of prescriptive right whether the proceeding is brought by the state or by an individual who has sustained special damage from the defendant's wrong."

The case of *Ingersoll v. Rousseau*, 35 Wash. 92, 76 Pac. 513, is to the same effect. The trial court properly ordered the removal of the fence from the highway.

We now come to the question of the damages. For the removal of the ten cubic yards of earth, a witness called by the respondent placed the damages at ten dollars. There was evidence offered by the appellant that it was less. The appellant had no right to deliver the water from the pipe upon the respondent's land. An owner of upper lands may permit the surface water from his land to flow in its natural course to the lands below without incurring any liability therefor, but if the owner of the higher land constructs dams, ditches or other works to turn the surface waters which have accumulated on his land onto the lands of his neighbor, he must respond in damages. 3 Kinney on Irrigation and Water Rights (2d ed.), p. 2969; 3 Farnham on Waters and Water Rights, p. 2575. Under the law, the respondent was entitled to recover for the removal of the ten cubic yards of earth, and the damages for this should be fixed at ten dollars.

The claimed damages for loss of an early crop cannot be sustained, under the evidence in this case. It may well be doubted whether the placing of the pump and the pipe in the highway prevented the respondent from producing an early crop, had the conditions been such that he could otherwise have done so. It must be remembered that the pipe and pump had been removed from the highway prior to February 21st. There was evidence that, at the time the

pump and pipe were installed, there were puddles of water on the land of respondent. Assuming, however, that the evidence was sufficient on the question of interference with the use of the respondent's property in preparing it for an early crop, there is no evidence which reasonably fixes the amount of damages for the loss thereof. A son of the respondent testified:

"Q. What is the difference per acre in the product that you get off of a two-year crop like you contemplated and a one-year crop per acre in value? A. Well, that tract of land there being about an acre, I'd say that we necessarily put down our early crop and we could not get to it,—well, you might lose from two to three hundred dollars on an acreage like that of early crop."

It will be noticed that the witness says that one "might" lose from two to three hundred dollars per acre. But this falls short of being evidence which establishes to a reasonable certainty the amount of such loss, if any. The trial court erred in including in its judgment any amount for the loss of crop.

The cause will be remanded to the superior court, with direction to modify its judgment as herein indicated.

BEALS, C. J., TOLMAN, MILLARD, and STEINERT, JJ., concur.