EUSEBIA FERRER, WIDOW OF LUGO, Plaintiff and Appellee, *v.* MARIANO VARELA, Defendant and Appellant.

No. 9955. Argued November 17, 1949.—Decided March 24, 1950.

72

*Carlos D. Vázquez* for appellant. *Romany & Romany* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Eusebia Ferrer, widow of Lugo, petitioned in this case the issuance of a mandatory and permanent injunction ordering the defendant, Mariano Varela, to proceed to the demolition of a house which the latter is alleged to have built, without any title or right, upon Palma Street in Miramar, in which he has a business for the sale of refreshments and other articles. The plaintiff claimed that said construction continuously prevents free access to a strip of land belonging to her which is bounded on the east by said Palma Street, and obstructs the view from a house situated on a lot also belonging to her, which is bounded on the north by the other strip of land. The defendant denied the facts alleged in the complaint and as a special defense alleged that the plaintiff was guilty of laches since she did not object or take any step to prevent the construction of the house over ten years ago.

The case was heard and after making an inspection of the place, the lower court granted the complaint and in its judgment ordered the defendant to destroy, within 30 days after the judgment became final, the small house mentioned in the petition and where the defendant has his business, except one twentieth of it which is located on the plaintiff's property, since it reached the conclusion that said small house,

with the exception of said one twentieth, is located upon land which is part of Palma Street, today Guayama Street. It also ordered the defendant to refrain from building a house or structure upon said street, which might prevent the plaintiff from having free access to Guayama and Lindbergh Streets or which might obstruct the view to said streets from plaintiff's home. It also imposed on the defendant the payment of costs and $250 as attorney's fees.

Even though the defendant, on appeal from the judgment, assigns six errors, the first three attack in different ways the weighing of the evidence as well as the conclusions of law of the lower court. Hence we shall dispose of them jointly.

■ The trial court did not set forth in the opinion of the case, its findings of fact or conclusions of law, as required by Rule 52 (a) of the Rules of Civil Procedure, and although the conclusions of fact and of law may be determined from its opinion they are so intertwined, that they do not keep the proper correlative order. Again we call the attention of the lower courts to what we said in *Meléndez* v. *Metro Taxicabs*, 68 P.R.R. 709, as to the convenience of complying with Rule 52 (a), a suggestion repeated in *Varela* v. *Fuentes*, 70 P.R.R. 838 and *Pérez* v. *Cruz*, 70 P.R.R. 890.

■■ The lower court found, upon believing the evidence presented by the plaintiff and especially the testimony of José Llompart Meléndez, that many years ago Rafael Fabián was the owner of a property of more than 34,000 square meters in the ward of Miramar in Santurce, which he proceeded to urbanize with a view to selling lots; that Mr. Llompart drafted the plan of the urbanization in which the street known as Palma was laid out; that the people who bought lots adjoining said street did so knowing that said street existed in the plan and because they knew that their properties would have an entrance and an exit to said street; that the plaintiff acquired her property by public deed executed on January 15, 1942, before notary public Harry M. Besosa by purchase from José Matos Matos and it was stated in said

deed of sale that the property was bounded on the east by "a street laid out in the plan parallel to the tracks of the American Railroad Company"; that she complained to the Department of Health when the former owner of the small house started to build it, but that it was finished clandestinely; that the Government of the Capital, due to the fact that there were several streets with the same name, changed its name from Palma to Guayama Street; that said street has been opened for free traffic of the public; that the small house used by the defendant is located almost in its entirety upon said street and obstructs the entrance to the plaintiff's property and also the view from her home towards Guayama and Lindbergh Streets.

The appellant maintains that since it has not been proved that Mr. Fabián had donated the strip of land containing said street to the Municipality of San Juan and that the municipality had accepted said donation by public deed, or that by document of title a servitude of right of way had been established on said strip of land, the court erred in applying the common law rule of dedication to public use which should not be applied in Puerto Rico.

We do not agree. What Mr. Fabián did upon urbanizing his land and opening Palma Street as part of the improvement plan was not a donation or the constitution of a servitude requiring a written acceptance from the municipality or an instrument of title in the second case. As the appellee righteously states, the characteristic of a donation is the liberality of a person in disposing of his property for the benefit of another. But here, what Mr. Fabián did in urbanizing his land was to enter into a business transaction since he laid out and opened Palma Street so it would give access to said lots, as part of the consideration in the sale of the lots in the improvement plan. And assuming, without deciding, for the sake of argument, that said street constitutes a servitude established by Mr. Fabián, the fact that every time a lot of the urbanization was sold it was stated that one of its bound-

aries was said street, was sufficient to establish the right, as a matter of fact and of law, to maintain it there.

 But this matter is not novel in this jurisdiction. In the case of *Capella* v. *Carreras*, 48 P.R.R. 811, which dealt also with an attempt to obstruct public traffic through Palma Avenue[1] at Miramar, and after citing authorities applicable to cases of this nature, we said on pages 820–821:

"From the above decisions it follows, in the first place, that once an improvement project is laid out by dividing a parcel of land into blocks, lots, and streets, the owner of the lots sold within the improvement project is precluded from denying the use of the streets so laid out to his vendees, and, in the second place, it is also inferred that the owners of the lot acquire the right to use the streets laid out for the benefit of their lots, not only as against the vendor but also as against any person who may limit and disturb the use and enjoyment of the property. Persons purchasing according to the improvement plan acquire rights and contract duties of a reciprocal character, one of such rights being that of having access to the streets laid out in the plan for the benefit of their lots and to be respected in the use of such streets. But even if it were otherwise, if the original owner of the land dedicated to streets can not prevent the purchasers from using them, much less can a person having no title over said land prevent such use, especially if he is the owner of a lot acquired under the improvement project. . . .

". . . The improvement project, as inferred from the evidence, shows that the streets and avenues were dedicated to the public use and that lots were sold subject to the plan adopted. In so far as acceptance is concerned, the same may be express or implied. We do not know how far it may be denied that the Miramar improvement has been accepted by the municipality. From the evidence it might be inferred that the officers of the municipality acted as if there had been an acceptance. But as regards the rights of the plaintiffs, this question is of no importance. With or without such acceptance, the purchasers of

---

[1] We are unable to determine whether the Palma Street, today Guayama, involved herein, is the same Palma Avenue involved in *Capella* v. *Carreras,* 48 P.R.R. 811, or the continuation thereof, or if because two different streets with the same name were involved, the name of the former was changed to Guayama.

lots in an improvement project are entitled to avail themselves of the streets dedicated to the public use and to demand the removal of any nuisance or disturbance that might impair such right."

We ratified the doctrine laid down in the second appeal taken in the same case. *Capella* v. *Carreras*, 57 P.R.R. 250, and said besides, on page 256 that:

"In order that a street may exist, with the right to the use thereof by the purchasers of lots according to an improvement project in whose plan it is drawn, it being actually laid out on the ground for the free use of such purchasers and the public, it is not necessary that said street should be paved or asphalted or that it should have sidewalks, gutters, and a sanitary system."

See also the cases of *Capital of P. R.* v. *Robles*, 60 P.R.R. 686, in which we ratified those of *Capella* v. *Carreras, supra;* and *Figueroa* v. *Guerra*, 69 P.R.R. 565, wherein upon referring to the first case of *Capella* v. *Carreras*, we said:

"The *Capella* case involved a special situation. There a lot was acquired which formed part of an urbanization which had been laid out pursuant to a plan by lots, blocks and streets. Obviously, under such circumstances, a lot owner may not deny adjacent property owners and the public in general the right to use streets laid out on the plan for the benefit of all the lots. The cases on which we relied in the *Capella* case all involve similar plats or plans. Cf. Annotation 172 A.L.R. 167."

The very same case of *Figueroa* v. *Guerra, supra,* illustrates the difference between cases of dedication of streets to public use pursuant to an urbanization by sale of lots and those in which it is intended to create a servitude of right of way through a particular place without any title.

There was sufficient proof to show that the house used by the appellant is located, almost in its entirety, on Palma Street, today Guayama Street; that said street is open to public traffic; that said house obstructs the free entrance and exit of the appellee to her property; that the Inspector of Public Works of the Government of the Capital, Mr. Néstor

Gaztambide, informed the appellant through an employee that said house could not stand there; that the appellant acquired the house from Ramón Burgos, who was the one who built it. Burgos was the only witness for the defendant. He testified that he built the small house on Mr. Fabián's land, but not on Palma Street, because he had always repaired that alley so as to be able to drive across some trucks which are kept in a garage of the Puerto Rican Express located on that very street; that he does not know if the house is on part of Palma Street because he can not tell whether it is a street, because the municipality has never paved it; that the house does not obstruct the traffic along said street. Said witness admitted that the land where he built the small house was not his and that he built it without the permit of the Health Department.

We are satisfied that the lower court did not commit error in the weighing of the evidence and that appellant's was not sufficient to controvert the essential fact of the dedication of Palma Street, today Guayama, to public use.

■ The appellant maintains in his fourth assignment that the court erred in holding that appellee did not commit laches and that said plea does not lie in these cases to abate a public nuisance in a street. There is no such error either. As we said in the case of *Capital of P. R.* v. *Robles, supra,* pp. 696–697: "As to the defense of laches, it will suffice to say that the facts of the case and the attendant circumstances as they appear from the evidence above set forth do not justify the same, and as to the defense of compromise no evidence in regard thereto was introduced at the trial."

And see *D'Ambrosia* v. *Acme Packing & Provision Co.,* 37 P.2d. 887 (Wash., 1934.)

■ That was the only defense pleaded by the defendant in his answer. But at the trial and over the objection of the plaintiff, he presented a public deed executed on January 10, 1947, one month and odd days before the claim was filed, in which the defendant and his wife appeared selling the

house standing on another's land to a daughter of theirs for the sum of $1,100, which the vendors attest as having received before the execution of the deed. The appellant claims that since he is not the owner of the house, the writ of injunction does not issue against him. The lower court held that, in accordance with the evidence, the defendant had admitted to witness Llompart that he was the owner of the house; that it was proved moreover that, in spite of the deed, the defendant continued in possession of the house in the same manner in which he used it formerly with his business established in it; that the conveyance to his daughter for $1,100 not paid in the presence of the notary, and all the surrounding circumstances in the transaction, not explained by the defendant or his daughter who although present at the trial did not testify, and the failure of the daughter to intervene in the case, were sufficient to decide, as it did, that said deed was simulated and as such nonexistent, calculated to obstruct the present action and that the true owner of the house is the appellant.

In our opinion, the lower court did not err in arriving at the conclusion that the deed of sale was simulated and as such, nonexistent. *Rodríguez* v. *Pizá*, 60 P.R.R. 653; *Gómez & Vega* v. *Merced*, 37 P.R.R. 801; *Cf. Cortés* v. *Martínez*, 69 P.R.R. 710. Nor did it err in ordering the defendant to pay attorney's fees, but we do not think that they may be imposed on appeal as requested by the appellee.

The judgment will be affirmed.