[No. 33772. Department Two. May 23, 1957.]

COMMERCIAL WATERWAY DISTRICT NO. 1 OF KING COUNTY, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*[1]

*The Attorney General* and *E. P. Donnelly,* Assistant, for appellant.

*Taylor & Taylor,* for respondent.

FINLEY, J.—This appeal involves a dispute between the state of Washington and Commercial Waterway District No. 1 of King county, a municipal corporation (hereinafter referred to as the district), established under the provisions

[1]Reported in 311 P. (2d) 680.

of chapter 11, Laws of 1911, p. 11 [*cf.* RCW 91.04.010, *et seq.*]. The state and the district are both claiming title or ownership to certain portions of the beds and shores of the natural channel of the Duwamish river, and the district initiated this lawsuit to have title quieted in it.

The portions of the beds and shores of the Duwamish river here involved are located within the boundaries of the district and, allegedly, have been abandoned or have been ceded by the state of Washington to the waterway district pursuant to certain provisions contained in § 8, chapter 11, Laws of 1911, p. 21 [*cf.* RCW 91.04.200].

Allegedly, this came about because the particular provisions of § 8 purportedly became operative as a result of the diversion of the Duwamish river from its former natural channel to a man-made (deepened, widened, and straightened) channel known as the Duwamish waterway. The activities or proceedings of the district which resulted in the alleged diversion of the Duwamish river were authorized and accomplished under certain other provisions of chapter 11, Laws of 1911. The problem here involved necessitates an interpretation of the language of § 8, chapter 11, Laws of 1911, which we have italicized in quoting § 8 in full, as follows:

"*All the right, title and interest of the State of Washingington in and to so much of the beds and shores of any navigable river, stream, waterway or watercourse located within the boundaries of any commercial waterway district up to and including the line of ordinary high tide in waters where the tide ebbs and flows* and up to and including the line of ordinary high water within the banks of any navigable rivers and lakes, *to the extent that the same, under any proceedings to be had under this act, shall cease to become [be] part of such river, stream, waterway or watercourse by reason of the diversion of such river, stream, waterway or watercourse, under any proceedings had under this act,* are hereby given and granted and vested in the respective commercial waterway districts now existing, or hereafter to be formed, and the commissioners of such respective commercial waterway districts are hereby given the right, power and authority to sell such beds and shores in such manner and upon such notice and proceedings as govern,

under the existing laws of the state, the board of county commissioners in the sale and disposition of any real estate belonging to the counties of this state. The proceeds of such sales are to be used for the benefit of such commercial waterway districts, and the payment of any expenses connected with the construction of such commercial waterways or maintenance thereof: *Provided, however,* That the commissioners of such commercial waterway district may, in their discretion, exchange such abandoned beds and shores, for other property needed in the straightening, deepening or widening of such rivers, watercourses or streams, and which exchange may be made upon such terms and conditions and in such areas as, in the discretion of such commissioners, they may deem advisable and for the best interests of such commercial waterway district without any notice or other formality or proceedings whatever." (Italics ours.)

After considering the evidence and hearing the arguments of counsel, the trial court interpreted § 8, chapter 11, Laws of 1911 (hereinafter referred to as § 8), in a manner that gives the water district title to the portions of the beds and shores of the river involved in this lawsuit. The state has appealed.

As will be inferred from the foregoing, the statute here involved, including § 8, was enacted by the 1911 legislature. The act permitted the creation of commercial waterway districts and authorized them to deepen, widen, and otherwise improve rivers, streams, waterways, and watercourses located within the boundaries of such commercial waterway districts.

Pursuant to the statute, Commercial Waterway District No. 1 was established. It adopted a plan for the improvement of the Duwamish river, and wherever necessary, by purchase and by condemnation, acquired a right of way five hundred feet wide. Pursuant to the plan, the district dredged and constructed a deeper, wider, straighter—and therefore a more navigable and more usable—man-made waterway or channel for the river.

The new channel or waterway was dredged (a) for a distance of approximately four and one-half miles (b) to a depth of sixteen feet below the line of extreme low tide level and (c) to a width of approximately one hundred

fifty feet at its bottom, with the sides of the waterway from the bottom thereof somewhat taking their natural slope upward and outward. At some several points, for varying distances, the new, man-made waterway, or channel for the river, overlaps and follows the old or natural course of the river. At certain points, the new waterway leaves the old channel of the river, but in a relatively straight line again intersects, rejoins, or overlaps the old channel as it proceeds across the Seattle tide flats to Elliott bay.

To obtain a visual picture of the new waterway and its relationship to the old or natural channel of the river, it must be kept in mind that the lower stretches of the old channel of the river in its natural state followed a twisting and turning snakelike pattern for a distance of approximately twelve miles across the tide flats of south Seattle. The Duwamish waterway as constructed by the district reduces the distance now traversed by the river by several miles. As the result of the construction of the new waterway, there are a number of crescent or circular shaped slips or loops of the old channel lying on each side of the new waterway. Reference to the following map should be helpful in analyzing (a) the problem here involved and (b) our discussion of it.

After the construction of the new waterway, some of the slips or loops of the former channel of the Duwamish river were filled in, and clearly ceased to be a part of the river by reason of the construction of east Marginal way, a well-known street of the city of Seattle. It is conceded that title to the portions of the former shores and bed of the river which lie east of east Marginal way has passed to the district. In other slips or loops of the original channel, which have not been filled in, the tide still ebbs and flows as it does throughout the length and breadth of the new waterway.

There is testimony in the record to show that at the time of mean low tide, or at other lower stages of the tide, the river flows in and is entirely contained by the new waterway. There is also some testimony in the record showing

that at mean low tide level there is no tidewater and no river water or current in the slips or loops which have been left in their natural state, their depth not having been increased by dredging operations. In other slips or loops, dredging operations *by adjacent owners* permit tidewater to flow in a portion thereof at mean low tide. However, the district itself has never conducted dredging operations in any of the disputed slips or loops.

The principal point emphasized by the state seems to be that at high tide, and at other stages above mean low tide level, the tide still ebbs and flows in the slips or loops of the old channel which are located to one side or the other of the new Duwamish waterway; *i.e.*, that the tide still ebbs and flows over the portions of the beds and banks of the old river channel which are the subjects of this litigation. From this the state contends that these slips or loops, portions of the former river channel, have not been abandoned, and that title to the same has not been vested in the district by the operative effect of § 8. It seems to us that this contention of the state, if carried to its logical conclusion, would mean that no portions of the old river bed, or of the shores thereof located within the boundaries of the district, could ever be affected by § 8, because at certain stages of the tide all such portions are affected by tidal action, except possibly those portions which were filled in to permit the construction of east Marginal way and as to which no question is raised in this lawsuit.

Thus, in effect, the state's contention would completely nullify § 8, and the action of the legislature in enacting the section would be abortive. It appears crystal clear to us that the legislature certainly contemplated that its enactment of § 8 would have some force and effect.

■ Where one interpretation renders an enactment entirely inoperative and useless, but another interpretation gives some force and effect to the action of the legislature, the courts frequently adopt the interpretation which will give the enactment effect and will advance the purposes thereof.

■ Be that as it may, we think that in the instant case the state's position is untenable and that the language of § 8 crucial to this appeal is clear and unambiguous. Its obvious purpose is to give to waterway districts the title or ownership of those portions of the beds and shores of rivers, streams, waterways, and watercourses *affected by tidal action* which are by-passed or abandoned as the result of activities or proceedings of the districts in straightening, deepening, and widening such rivers, streams, waterways, and watercourses located within the geographical boundaries of such districts.

In other words, we agree with the trial judge's interpretation of § 8. Based thereon, the trial judge entered findings of fact and conclusions of law. These were to the effect that (a) the activities or proceedings of the district under the act have diverted the Duwamish river to the man-made Duwamish waterway with the result (b) that the portions of the old channel involved in this lawsuit have, in effect, been abandoned, and (c) that under the provisions of § 8, and by reason of their operative effect, title or ownership of these has become vested in the district. The foregoing findings and conclusions are supported by the evidence in the record; consequently, on appeal we will not substitute our judgment for that of the court.

In connection with the trial court's and our interpretation of § 8, and in supplementation and support thereof, it may be noted that § 8 authorizes waterway districts

"to sell such beds and shores" or to "exchange such abandoned beds and shores, for other property needed in the straightening, deepening, or widening of such rivers, watercourses or streams, and which exchange may be made upon such terms and conditions and in such areas as, in the discretion of such commissioners, they may deem advisable and for the best interests of such commercial waterway districts without any notice or other formality or proceedings whatever."

The purposes of these provisions is to permit waterway districts to control abandoned beds and shores of rivers or watercourses within the boundaries of such districts and to

facilitate, financially and otherwise, the construction and maintenance of improvements. Such purposes are consistent with and support the interpretation we have given heretofore to the language of § 8, which is crucial to the disposition of this appeal.

We note that in support of its contentions the state of Washington has cited the following decisions: *Hill v. Newell*, 86 Wash. 227, 149 Pac. 951; *Commercial Waterway Dist. No. 1 v. King County*, 200 Wash. 538, 94 P. (2d) 491; *Ghione v. State*, 26 Wn. (2d) 635, 175 P. (2d) 955. Our analysis of these cases indicates that they are hardly pertinent and certainly not controlling as to the interpretation and effect which we think was contemplated by the legislature with respect to § 8.

■ The trial court entered judgment against the state for costs. In *Clark v. Seiber*, 49 Wn. (2d) 502, 304 P. (2d) 708, we held that costs cannot be assessed against the state except where the action is "prosecuted in the name and for the use of the state," (see RCW 4.84.170), and cited *Washington Recorder Pub. Co. v. Ernst*, 1 Wn. (2d) 545, 97 P. (2d) 116; see, also, *Ghione v. State, supra*. Under the authority of these cases, we hold that the trial court erred in assessing costs against the state, and the judgment is modified accordingly.

For the reasons indicated hereinbefore, the judgment of the trial court, as modified relative to costs, should be affirmed.

It is so ordered.

HILL, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.