[No. 36273.   Department Two.   July 18, 1963.]

KING COUNTY, *Appellant,* v. THE BOEING COMPANY, *et al.,*
*Respondents.**

*Reported in 384 P. (2d) 122.

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for appellant.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie,* and *H. Weston Foss,* for respondent The Boeing Company.

*Matsen, Clark, Cory & Matsen,* by *Newman H. Clark,* for respondent Isaacson Iron Works.

HAMILTON, J.—Plaintiff, King County, appeals from a summary judgment granted in favor of defendants, The Boeing Company (hereafter referred to as Boeing) and Isaacson Iron Works (hereafter referred to as Isaacson).

The suit between the parties revolves about drainage of surface waters from the southerly portion of the King County Airport, also known as Boeing Field. There is no substantial dispute as to the facts. The parties disagree as to the governing legal principles.

In 1911, Commercial Waterway District No. 1 of King County (hereafter referred to as the district) was formed, pursuant to Laws of 1911, chapter 11, p. 11, RCW 91.04.010, *et seq.* The purpose of the district was to straighten, widen, and dredge the natural course of the Duwamish River, a navigable stream, which flowed northwesterly into Elliott Bay, and to make thereof a ship canal or man-made waterway. In 1913, the district began construction of the canal, which is now known as the Duwamish Waterway. At several points, this waterway intersected and followed the old or natural thread of the river, then left the course of the river in a straight line to the next point of intersection. About 1916, the waterway was completed and the river was diverted from its natural channel and has since flowed in the waterway. By reason of this diversion, substantial portions of the natural channel of the river were bypassed and abandoned, leaving a number of crescent or oxbow loops lying on both sides of the waterway, the title to which vested in the district.[1] The abandoned portions of the river

---

[1] *Commercial Waterway Dist. No. 1 of King Cy. v. State,* 50 Wn. (2d) 335, 311 P. (2d) 680.

lying east of the waterway and west of East Marginal Way are referred to as "slips". There are seven such slips, all of which now have been sold by the district. The abandoned portions of the river channel lying east of East Marginal Way, between Slips 4 and 5, were sold by the district to King County, filled, and now lie beneath the airport.

The following map portrays the area between Slips 4 and 5, including the waterway, the airport area, and the abandoned portions of the river lying east and west of East Marginal Way. The superimposed arrows indicate the original direction of the river's flow. All but 900 feet of Slip 5 has heretofore been filled.

Before and after construction of the waterway and the airport, surface waters drained naturally in a northerly and westerly direction. The present runways of the airport are at a grade of .38 per cent from south to north. Before and after construction, the waters of the river and the waterway were affected by the ebb and flow of the tides in Elliott Bay. When the tides are in, the unfilled portion of Slip 5 is flooded. When the tides go out, Slip 5 drains westerly into the waterway.

In 1943, the airport was owned and operated by the United States Government, during which time a drainage system was installed. By this system, the surface waters upon the southerly portion of the airport are collected in an elaborate system of underground pipe and catch basins, and then pumped, by a series of six pumps, westerly through a 4-foot drain pipe that runs beneath East Marginal Way, several railroad tracks, and some buildings located on property belonging to Isaacson. The terminus or outfall of this drain discharges the surface waters pumped through it into the remaining 900 feet of Slip 5, from whence it flows into the waterway.

This drainage system was constructed without the knowledge or consent of the district, which then owned Slip 5. In 1947, Isaacson granted a 12-foot easement over its property, conforming to the route of the existing drain pipe.

The United States Government sought an easement through Slip 5, which was refused by the district.

In 1956, the district sold Slip 5 to Isaacson and Boeing's predecessor. Isaacson now owns the northerly portion of Slip 5 and Boeing the southerly portion. Both Isaacson and Boeing own land adjacent to their respective portions of the slip.

The present dispute arose when Isaacson commenced filling its portion of Slip 5 with impervious material to bring it to the level of its adjacent property. It is undisputed that if Isaacson and Boeing fill Slip 5 the existing drainage system for the southerly portion of the airport will be blocked and, unless remedied, the airport flooded.

Isaacson offers an easement through Slip 5 to permit extension by King County of its drain pipe. King County consents to extension of its pipe by defendants. Herein lies the core of the controversy: Who shall pay for extension of the drain pipe through Slip 5?

King County commenced this action, seeking to enjoin the filling of Slip 5. A temporary restraining order was issued ex parte. Issue was joined and a motion for summary judgment interposed. The trial court, upon the basis of the undisputed facts, as presented by the pleadings and affidavits submitted, concluded King County had no legal right to discharge surface waters from the airport into Slip 5, the property of Isaacson and Boeing, and dissolved the temporary restraining order.

King County, on appeal, makes five assignments of error, which by argument are reduced to two basic contentions: (a) Slip 5 is a natural water or drainage course, and (b) Isaacson and Boeing are estopped from interfering with or obstructing the existing drainage system.

King County's contentions must be considered against the backdrop of the following applicable principles, which we consider established by previous decisions of this court:

(1) The bypassed and abandoned portions of the bed and shores of the Duwamish River ceased to be a part of

the Duwamish river, waterway, or watercourse, and title thereto, with the power of alienation, vested in Commercial Waterway District No. 1. *Hill v. Newell*, 86 Wash. 227, 149 Pac. 951; *King Cy. v. Commercial Waterway Dist. No. 1 of King Cy.*, 42 Wn. (2d) 391, 255 P. (2d) 539; *Commercial Waterway Dist. No. 1 of King Cy. v. State*, 50 Wn. (2d) 335, 311 P. (2d) 680; *Commercial Waterway Dist. No. 1 of King Cy. v. Permanente Cement Co.*, 61 Wn. (2d) 509, 379 P. (2d) 178; RCW 91.04.170, 91.04.200.

(2) Surface waters are ordinarily those vagrant or diffused waters produced by rain, melting snow, or springs. *Alexander v. Muenscher*, 7 Wn. (2d) 557, 110 P. (2d) 625.

(3) A natural watercourse, insofar as riparian rights be concerned, and as related in appropriate instances to drainage rights, is defined as a channel, having a bed, banks or sides, and a current in which waters, with some regularity, run in a certain direction. *Geddis v. Parrish*, 1 Wash. 587, 21 Pac. 314; *Tierney v. Yakima Cy.*, 136 Wash. 481, 239 Pac. 248; *In re Johnson Creek*, 159 Wash. 629, 294 Pac. 566; *DeRuwe v. Morrison*, 28 Wn. (2d) 797, 184 P. (2d) 273. A natural drain is that course, formed by nature, which waters naturally and normally follow in draining from higher to lower lands. *Thorpe v. Spokane*, 78 Wash. 488, 139 Pac. 221; *Trigg v. Timmerman*, 90 Wash. 678, 156 Pac. 846; *D'Ambrosia v. Acme Packing & Provision Co.*, 179 Wash. 405, 37 P. (2d) 887.

(4) Surface waters are to be regarded as outlaw or common enemy waters, against which every proprietor of land may defend himself, even to the consequent injury of others. *Cass v. Dicks*, 14 Wash. 75, 44 Pac. 113; *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464; *Wood v. Tacoma*, 66 Wash. 266, 119 Pac. 859; *Thorpe v. Spokane, supra*; *Miller v. Eastern R. & Lbr. Co.*, 84 Wash. 31, 146 Pac. 171; *Morton v. Hines*, 112 Wash. 612, 192 Pac. 1016; *DeRuwe v. Morrison, supra*; *Wilkening v. State*, 54 Wn. (2d) 692, 344 P. (2d) 204.

(5) Surface waters may not be artificially collected and discharged upon adjoining lands in quantities greater than,

or in a manner different from, the natural flow thereof. *Noyes v. Cosselman*, 29 Wash. 635, 70 Pac. 61; *Sullivan v. Johnson*, 30 Wash. 72, 70 Pac. 246; *Peters v. Lewis*, 33 Wash. 617, 74 Pac. 815; *Holloway v. Geck*, 92 Wash. 153, 158 Pac. 989; *Whiteside v. Benton Cy.*, 114 Wash. 463, 195 Pac. 519; *D'Ambrosia v. Acme Packing & Provision Co., supra*; *Ulery v. Kitsap Cy.*, 188 Wash. 519, 63 P. (2d) 352; *Tope v. King Cy.*, 189 Wash. 463; 65 P. (2d) 1283; *Laurelon Terrace, Inc. v. Seattle*, 40 Wn. (2d) 883, 246 P. (2d) 1113; *Feeley v. E. R. Butterworth & Sons*, 42 Wn. (2d) 837, 259 P. (2d) 393; *Buxel v. King Cy.*, 60 Wn. (2d) 404, 374 P. (2d) 250.

(6) Unity of title in the dominant and servient estates and subsequent separation is prerequisite to creation of an implied easement. *Adams v. Cullen*, 44 Wn. (2d) 502, 268 P. (2d) 451.

(7) The doctrine of estoppel will not be readily extended when the effect thereof is to divest an estate in real property. *Finley v. Finley*, 43 Wn. (2d) 755, 264 P. (2d) 246, 42 A.L.R. (2d) 1379.

King County first contends that Slip 5 was originally and is presently a natural watercourse or drainway for properties lying east of East Marginal Way. Among the reasons asserted in support of this contention is that the flux and reflux of the tide caused waters within the old channel, and now causes waters within Slip 5, to flow both east and west.

We cannot agree with King County's contention for three reasons. First, it is undisputed that the natural current and flow of the original Duwamish River through that portion of its channel which is now known as Slip 5 was in an easterly direction. Second, the normal and natural drainage of surface waters from the properties lying east of East Marginal Way was originally and is presently north and northwesterly, rather than westerly toward Slip 5. And, third, the ebb and flow of the tides in either the Duwamish River, the Duwamish Waterway, or Slip 5, in nowise alters the natural drainage direction of surface waters from surrounding properties.

In short, absent consent of the proprietors, King County has no legal right to artificially collect and discharge surface waters upon or into Slip 5 in quantities greater than, or in a manner different from, the natural flow of such surface waters.

King County next contends Isaacson and Boeing are estopped from interfering with or obstructing discharge of waters into Slip 5 from the existing drainage system. This contention is premised upon King County's assertion that (a) Commercial Waterway District No. 1, as common grantor of the abandoned portions of the Duwamish River channel, rendered necessary artificial drainage of the airport properties by construction of the Duwamish Waterway; (b) by its grant of an easement through its property, in 1947, Isaacson acquiesced and consented to the construction and maintenance of the artificial drainage system discharging into Slip 5; and (c) Boeing, through its predecessors in interest, including Commercial Waterway District No. 1, and Isaacson, as a tenant in common, is bound by the visible use and patent necessity of Slip 5 as a drainway.

We find no merit in King County's contention. It has cited no authority, and we have found none, erecting, by operation of law, an extension of an easement such as is here sought under the circumstances here present. The record is devoid of any fact from which it might be inferred that King County, or its predecessor in interest, the United States Government, relied upon the actions of Commercial Waterway District No. 1, the Isaacson grant of easement, or the conduct of Boeing, or its predecessors in interest, as according any easement beyond the outfall of the existing drainage system. In fact, the record indicates without dispute that King County's predecessor in interest frankly recognized the necessity for acquiring easement rights through Slip 5, and failed in its efforts to perfect such rights. We do not attribute to King County a lesser knowledge.

The judgment of the trial court is affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.