[No. 36212-7-I.   Division One.   March 31, 1997.]
PATRICIA DIBLASI, ET AL., *Respondents*, v. THE CITY
OF SEATTLE, *Appellant*.

*Mark H. Sidran, City Attorney,* and *Denny E. Anderson, Assistant,* for appellant.

*Karen A. Willie* and *Smith, Smart, Hancock, Tabler & Schwensen,* for respondents.

WEBSTER, J. — This is a water law case involving the common enemy rule. DiBlasi's land initially slumped and later collapsed due to water soaked soil. She sued the City of Seattle, alleging that it collected and thrust surface water on to her property from a city street. The trial court granted DiBlasi summary judgment.

On appeal, the City contends that the mere improvement of a public right of way cannot constitute artificial collection, concentration, or channeling of water under

the common enemy rule of water law. We agree. And because the expert testimony upon which DiBlasi relies demonstrates only that the city's initial grading and opening of dedicated rights of way contributed to the damage, we hold that the city is not liable for surface water damage. Hence, we reverse and remand to the trial court, with instructions to grant summary judgment in favor of the city.

## FACTS

The City of Seattle accepted the Daugherty Addition plat, located in West Seattle, in 1924. The plat dedicated S.W. Barton Street, 38th Ave. S.W., S.W. Bernice Pl., and S.W. Fletcher St. to the city for public use as roadways, including "the right to make necessary slopes or cuts or fills upon the lots, blocks, tracts etc. shown on this plat in the reasonable original grading of all the street avenues etc." The city graded and opened S.W. Barton Street. Later, it opened the first 135 feet of 38th Ave. S.W. south and west from S.W. Barton Street utilizing asphalt and seal coating. The city owns the property west of 38th Ave. S.W., commonly known as Fauntleroy Park.

In 1975, a contractor graded and graveled approximately 165 feet further south and west along S.W. 38th Ave., up to the point of a large ravine running west to east. At the same time as grading and graveling 38th, the contractor constructed DiBlasi's home east of 38th Ave. S.W. The city alleges that the contractor, during construction, filled a smaller ravine which ran north to south adjacent to the home; the city relies on a 1956 topographical map, and the presence of non-native material among soil which subsequently collapsed and slid into the ravine. The contractor denies placing any fill "under 38th Ave. S.W. or the area where the landslide occurred on the DiBlasi property."

Thirty-eighth Ave. S.W. slopes downward from S.W. Barton, with an elevation of 275 feet above sea level close to S.W. Barton and 245 to 255 feet on 38th Ave. S.W. adjacent

to the DiBlasi residence. The city constructed no catch basins, channels, ditches, or artificial drains on that portion of 38th Ave. S.W. which it opened. Diffuse surface water runoff from the impermeable street surface has created gullies on the graded graveled portion of 38th Ave. S.W. On the southern side of S.W. Barton St., which lies north and runs perpendicular to 38th Ave. S.W., the city constructed a berm, in 1975, to prevent S.W. Barton St. surface water from entering 38th Ave. S.W. When the city resurfaced S.W. Barton in 1986, it removed the berm. Responding to citizen complaints, the city reinstalled the berm well before 1991. Despite the berm, in times of heavy rain, some water would flow from S.W. Barton street onto 38th Ave. S.W., although the city alleges that any such surface waters are within the "natural watershed or drainage basin" of the area.

In March 1991, DiBlasi asked P. Erik Mikkelsen, a geotechnical engineer, to inspect the slope at the end of 38th Ave. S.W. adjacent to DiBlasi's property. Mikkelsen detected a slump or setting down of earth, exposing three feet of the underlying soil. A continuation of the slump, or another slump, was on the dedicated roads or in Faunt-leroy Park. Mikkelsen met with city officials who denied his request that the city de-water portions of the property or redirect or rechannel surface flows away from the slumping area. De-watering would have cost approximately $15,000 and, in Mikkelsen's opinion, would have permanently remedied the problem. During a rainstorm in early April 1991, diffuse surface waters entered the slump, causing a landslide from DiBlasi's property onto S.W. 38th St., and S.W. Fletcher St., and Fauntleroy Park. DiBlasi eventually erected a concrete cantilevered wall costing $140,000.

DiBlasi sued the city. On cross motions, the trial court granted summary judgment in favor of DiBlasi as to the city's liability, and later granted DiBlasi's motion to strike the city's affirmative defenses of contribution and contributory negligence. The parties stipulated to the amount of

damages and the trial court then entered judgment in Di-
Blasi's favor.

## DISCUSSION

### Common Enemy Rule: Municipal Grading Versus Artificial Thrusting

A municipality is not liable for consequential injury to private property occasioned by the original grading of streets.[1] When a lawsuit alleges that diffuse surface waters damaged property as a result of street building, however, municipal law must be fused with water law. "[M]unicipal rights and liabilities as to surface waters are the same as those of private landowners within the city."[2] Diffuse surface water is a common enemy, against which every proprietor of land may defend himself, even to the consequent injury of others.[3] Thus, a municipality is not liable for consequential injury when, in opening streets, it changes the *nature of the surface*, thereby increasing the flow of surface water.[4] Whenever development occurs, the area for natural percolation is diminished, modifying the flow of surface water.[5] In this regard "a municipality is not liable to a property owner for the increased flow of surface water over or onto his or her property, arising wholly from the changes in the *character of the surface* produced by the opening of streets. . . ."[6] There is no af-

---

[1] *Wood v. Tacoma*, 66 Wash. 266, 271, 119 P. 859 (1911).

[2] 18A EUGENE McQUILLIN, MUNICIPAL CORPORATIONS § 53.140 (3d rev. ed. 1993).

[3] *King County v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

[4] *Hoover v. Pierce County*, 79 Wn. App. 427, 432, 903 P.2d 464 (1995), *review denied*, 129 Wn.2d. 1007 (1996); *Wilber Dev. v. Les Rowland Constr.*, 83 Wn.2d 871, 874, 523 P.2d 186 (1974).

[5] *Patterson v. Bellevue*, 37 Wn. App. 535, 537-38, 681 P.2d 266, *review denied*, 102 Wn.2d 1005 (1984).

[6] McQUILLIN, *supra*, note 2, § 53.141.

firmative duty to construct sewers to take care of diffuse surface waters, or to drain them.[7]

On the other hand, the law imposes liability for the artificial collection and discharge of diffuse surface waters on adjoining land in quantities greater than, or in a manner different from, the natural flow.[8] Thus, a town's construction of a ditch causing diffuse surface water to come to adjoining property more swiftly than it otherwise would have, changed the manner of the natural flow.[9] When a county transferred surface water by culvert, and subsequently into a ravine, it has artificially collected and discharged surface water in a manner different from the natural flow.[10]

With these general principles in mind, we turn to two cases: *Wood v. Tacoma*,[11] and *Burton v. Douglas County*.[12] In *Wood*, the court synthesized municipality and water law in holding that "a city is not liable in damages for injuries to private property by the collection of surface water thereon, caused by the initial grading or improvement of its streets and alleys."[13] Although recognizing the collection and discharge exception discussed above, it found the evidence insufficient to meet the exception:

> It fails to show that the water was discharged upon the appellant's lots in a concentrated volume. It escaped from the manhole in the street, and flowed upon the appellant's land

[7]*Id.* § 53.140; *Gaines v. Pierce County*, 66 Wn. App. 715, 721, 834 P.2d 631 (1992), *review denied*, 120 Wn.2d 1021 (1993).

[8]*Wilber*, 83 Wn.2d at 874-75.

[9]*Wilber*, at 876; *cf. Trigg v. Timmerman*, 90 Wash. 678, 682, 156 P. 846 (1916) (causing surface water to flow in its natural direction through a ditch, rather than over the surface or by percolation, when there is no increase in volume, is not a prohibited collection and discharge).

[10]*Colella v. King County*, 72 Wn.2d 386, 390, 433 P.2d 154 (1967); see also *Whiteside v. Benton County*, 114 Wash. 463, 467, 195 P. 519 (1921) (digging artificial ditch gives rise to liability).

[11]66 Wash. 266, 119 P. 859 (1911).

[12]14 Wn. App. 151, 539 P.2d 97 (1975).

[13]66 Wash. at 272.

in a diffused form, as it would have done in any event. In such a case, the mere fact that the water was concentrated in its course to appellant's land does not create a liability which would not otherwise exist.[14]

Because raising the adjacent street's grade caused the collection of water, the municipality was not liable.[15]

In *Burton*, the court held that a road with a crown acted as a channel to collect and divert water from its natural course.[16] "Country Club Drive acted as an artificial drain, collecting, channeling, and depositing surface waters onto Burton's property to his damage."[17] The *Burton* court relied upon *Tope v. King County*,[18] although *Tope* involved construction of a ditch through a natural barrier, and deliberate placement of a culvert so as to carry the surface waters from one location to another. We decline to follow *Burton*. We cannot meaningfully reconcile its holding with *Wood*.[19] A municipality, in constructing a road upon a dedicated street in a plat, even though it changes the surface, and increases the flow onto adjacent property (because the roadway is impermeable, for example), does not incur liability.[20] As the court in *Barton* relied upon the existence and original grading of the road, rather than the gathering of water into an artificial drain or channel, we think it misstates the law.[21]

Having now established the applicable principles governing DiBlasi's claim, we examine the expert testimony. The question is whether the expert testimony establishes an issue of material fact as to the concentra-

[14]66 Wash. at 273.

[15]66 Wash. at 270.

[16]14 Wn. App. 151, 155.

[17]14 Wn. App. at 154.

[18]189 Wash. 463, 471-73, 65 P.2d 1283 (1937).

[19]66 Wash. at 273.

[20]66 Wash. at 272.

[21]*Compare* 14 Wn. App. at 156 *with Whiteside v. Benton County*, 114 Wash. 463, 466-67, 195 P. 519 (1921) *and* McQuillin, *supra*, note 2, § 53.144.

tion and discharge of waters by the city on to DiBlasi's property. Dr. Leytham's August 1994 declaration included the following:

4. In the natural state, the ravine that runs perpendicular to 38th Avenue S.W. would carry minimal surface water flows. Surface waters would percolate into the ground, not over the ravine's sides.

5. Because of the location of 38th Avenue S.W., surface waters have been concentrated, collected and thrust onto adjoining lands in quantities greater than, and different from, the natural regime.

6. Flows were directed onto the area of 38th Avenue S.W. at the edge of the ravine without regard for the consequences of those flows and without making adequate provisions for the resulting outflows to be conducted to the ravine bottom. In my professional opinion, it was negligent to allow this concentration and collection of waters without a proper outflow device such as the catch basin and drain that the City required in this area after the April 1991 landslide.

Leytham's September 1994 declaration also asserted a collection, concentration and thrusting of water from 38th Avenue, and his December 1994 declaration explained, at least partially, the contributing factors:

6. Contrary to Mr. Peterson's declaration, it is self-evident that the location of 38th Avenue S.W. resulted in storm runoff being discharged into the area of the slump at the foot of 38th Avenue S.W. The volume of water is a function not only of the amount of rainfall but of the contributing surface area of both 38th Avenue S.W. and S.W. Barton Street, and the impermeable nature of the street surfaces.

Leytham also calculated the volume "delivered to the South End of 38th Avenue S.W. during the Storm of 3-5 April 1991." [Ex. H to Leytham December 1994 declaration.] He first calculated the volume of runoff from 38th Avenue S.W., assuming "runoff from area of street only," and assuming "entire length of street is impervious." Leytham then calculated the volume of runoff from S.W. Barton St. entering 38th Avenue S.W., assuming runoff

contribution from southern half of Barton between the west side of 36th Avenue S.W. and 38th Avenue S.W. From this, Leytham calculates the total runoff volume "reaching the south end of 38th Avenue S.W."

As a whole, this testimony focuses on the existence, location, grading, and impermeability of 38th Avenue S.W. When the city opened 38th Ave. S.W. and S.W. Barton streets, utilizing impermeable street surfaces, rain/storm water ran off the impermeable street surfaces to the end/edges of the street. Yet the common enemy rule, even with the noted exception, allows the city to construct impermeable roads, over the full width of the dedicated portion. Damage done by diffuse surface waters which would have otherwise percolated into the ground does not give rise to municipal liability. Surface water is outlaw, and the city is not liable under a water law theory for failing to install a storm water system, or failing to use a semi-permeable surface. We recognize that DiBlasi's experts also faulted the city's absence of storm water detention. But although plaintiff pleaded negligent design,[22] she does not urge that theory on appeal.[23] Further, *location* of a road could not create liability when the road is placed within that part of the plat dedicated for a road. DiBlasi purchased with reference to the plat, and is bound by the original grantor's dedication. She cannot now recover on the theory that the city should not have put a road where the grantor dedicated it.

The other factual basis for the concentration and discharge theory propounded by DiBlasi is a berm. A neighbor, Barbara Jayne, submitted a declaration which told of the resurfacing of S.W. Barton Street prior to the landslide. The city crews removed the berm, but, after complaints from Jayne, the city placed a new berm "across the top end of 38th Ave. S.W. to prevent the flows from entering 38th Avenue S.W." (timing of replacement

[22]Complaint at ¶ 16.

[23]Resp't Br. at 1-2.

unstated). (Jayne Dec. 8). Leytham's declaration included reference to the berm:

8. I have interviewed Barbara Jayne and know the contents of her Declaration filed in support of this motion. Removal of the berm across the top of 28th [sic] Avenue S. W., as described in Ms. Jayne's declaration, caused additional surface water to flow down 38th Avenue S. W. for a period of time. The waters flowed downhill and over the edge of the ravine. The flows normally would have been conducted along Barton Avenue S. W. and would not have entered 38th Avenue S. W. I estimate the increase in flows from Barton Avenue S. W. to be approximately double those that had already been collected and concentrated along 38th Avenue S.W.

9. I have inspected the berm as it exists today across the top of 38th Avenue S. W. The berm is intended to prevent surface waters on S. W. Barton Street from flowing down 38th Avenue S. W. The berm is very low and during severe storms, such as that of April 4, 1991, it is probably overtopped with the result that surface waters from S. W. Barton Street flow down 38th Avenue S. W. and into the area of the slump.

Leytham Dec. (8/8/94). Given the absence of a duty to construct a berm in the first place, the removal of the berm (for an undetermined period of time) cannot, as a matter of law, impose liability for artificial concentration and discharge on to the DiBlasi's property. Furthermore, summary judgment, if based on the berm, would be inappropriate because, by specifying only the date before which the city removed the berm, the plaintiffs have failed to establish proximate cause.

In conclusion, this record fails to establish any basis for the plaintiff's allegation that the city concentrated and discharged diffuse surface waters on to her property, other than the normal increase attributable to location and construction of non-permeable roadways within land dedicated for that precise purpose. Thus, the trial court erred in denying the city's motion for summary judgment.

We reverse summary judgment in favor of DiBlasi. And we find no disputed factual issue precluding summary judgment in favor of the city. Because DiBlasi has failed

to establish a basis for relief as a matter of law, we remand to the trial court to dismiss the complaint.

The remainder of this opinion will not be published because it addresses assignments of error which have no precedential value. It will be filed for public record in accordance with the rules governing unpublished opinions. *See* RCW 2.06.040.

GROSSE and AGID, JJ., concur.

Review granted at 133 Wn.2d 1002 (1997).