[No. 36433.   Department One.   September 12, 1963.]

AL C. STRICKLAND et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.

HAROLD M. WHITAKER et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.

JAMES F. ROGERS et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.

J. M. JORGENSEN et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.

R. A. ALLEN et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.

GEORGE W. THOMAS et al., *Respondents and Cross-appellants*, v. THE CITY OF SEATTLE, *Appellant*.*

*A. C. Van Soelen* and *John P. Harris*, for appellant.

*Corbett, Siderius & Lonergan*, for respondents and cross-appellants.

ROSELLINI, J.—These actions were brought by owners of waterfront properties on the west shore of Lake Washington, near the point where Thornton Creek flows into the

*Reported in 385 P. (2d) 33.

lake. Thornton Creek is a natural watercourse draining a large area in Seattle and King County. Silt carried by the stream is deposited at its mouth, forming a delta. It was the theory of the plaintiffs that activities of the city had increased the amount of siltation, causing the delta to build up rapidly and interfere with the use and enjoyment of their property. The causes were consolidated and tried before a jury, which returned a verdict in favor of the city.

Prior to submission of the issue of constitutional damaging to the jury, the parties had stipulated that the question of damages only should be submitted, while the determination of whether injunctive relief should be afforded would be reserved for the court. Consequently, after the verdict was returned, the trial court took under consideration the question whether the delta constituted a nuisance, made findings that it did, and enjoined the city in each case from

". . . maintaining a drainage system which collects and discharges into Thornton Creek any amount or any rate of silt or sediment in excess of the amount or rate which Thornton Creek transported in its natural condition. For the purposes of this injunction the natural capacity and the amount and rate of silting and sedimentation of Thornton Creek, in its natural condition, shall be as Thornton Creek existed prior to the year 1921."

The injunction continued:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that unless the City of Seattle takes corrective measures to prevent the deposit of silt and sediment in excess of the amount or rate which Thornton Creek transported in its natural condition, then the City of Seattle shall be liable in damages to the plaintiffs."

This injunction was founded upon the following conclusion of law entered by the court:

"The defendant City of Seattle in the erection, operation, and maintenance, use and repair of a connected system of storm sewage throughout the Thornton Creek watershed, within the corporate limits of the City of Seattle, created a nuisance specially injurious to the plaintiffs by reason of the silt deposits upon the property of the plaintiffs, proximately caused by the acts of the defendant City of Seattle in the maintenance of its storm drainage system and its

control of surface water within the area of the Thornton Creek watershed within its municipal boundaries."

It is the position of the city that this conclusion and the injunctive decrees were not justified by the facts. The evidence was that the city had annexed about two thirds of the watershed in recent years, and that there has been a rapid urbanization of the area. The stream in question flows over private property for the most part, except where it crosses city streets. The city paved streets and constructed ditches and culverts to direct the flow of surface waters. It did not increase the area of the watershed or the amount of surface waters. It did construct sanitary sewers to serve a large part of the area, and these sewers diverted some of the water that had previously drained into the creek. It also took over a diversion weir which had been previously constructed and which was designed to take care of overflow.

There had twice been a flooding of properties of some of the plaintiffs during heavy rainfalls. Damages were awarded for these two invasions of the properties, and the city does not question the propriety of these awards. There was no evidence that the banks of the stream had overflowed on other occasions.

There was evidence that the channeling of surface water into ditches and the paving of streets and making of other improvements on land in the watershed resulted in an increased turbulence in the stream, which caused a greater amount of silt to be carried down the stream than was the case when the watershed was in its natural state.

We need not consider the city's contention that the jury verdicts foreclosed any determination by the trial court that it had created a nuisance. We think the applicable rule of law is clear. It is set forth in the case of *Laurelon Terrace v. Seattle*, 40 Wn. (2d) 883, 246 P. (2d) 1113, and was recently restated in *Buxel v. King Cy.*, 60 Wn. (2d) 404, 374 P. (2d) 250.

In the *Laurelon* case, the city had constructed sewers which utilized a natural stream for overflow of waters which the sewers collected in the watershed served by

the stream. There was no showing that the city increased the flow beyond its natural capacity. During heavy rains, property of the plaintiff was flooded by the stream; the plaintiff brought suit against the city. In holding that the evidence would support no verdict other than one in favor of the defendant, and after holding that the discharge of sewage into the stream was not actionable unless it increased the flow beyond its natural capacity, we said:

"Plaintiff argues that, by doing additional paving and surfacing north of 55th street, as well as diverting the ditch into the stream, the city breached its duty to plaintiff, in that the flow of the stream was artificially accelerated and incidentally increased. It is well settled that the flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another. Annotations, 5 A.L.R. 1530; Annotations 36 A.L.R. 1463. A city is not negligent if it increases the flow of water through a natural drainway, due to streets and catchbasins, unless the drainage is increased beyond the capacity of the watercourse in its natural condition. In *Bowling Green v. Stevens*, 205 Ky. 161, 265 S. W. 495, the court said:

" 'The argument is that the new buildings and streets had the effect of causing to flow into the drain a quantity of water that would have been absorbed by the natural surface of the land. Manifestly, the rights of the lower proprietor are subject to the right of the upper proprietor to use his land in the natural and ordinary way, so long as there is no substantial change in the natural flow of the water. Hence, though the upper proprietor has no right to open or remove natural barriers and turn on lower lands surface water which would not otherwise flow in that direction, he has the right, even by ditches and drains, to drain the surface water from his own land into the channels which nature has provided, even though the quantity of water thrown upon the lower lands is thereby increased. [Citing cases.] The rule has been applied in favor of a municipal corporation and its right to carry off surface water in order to improve the streets and render its territory more suitable for building purposes has been recognized.' (p. 162)"

As in that case, there is no evidence here that the city was negligent in accelerating drainage by the installation of street paving, culvert, and ditches.

■ In *Trigg v. Timmerman*, 90 Wash. 678, 156 Pac. 846, where damage resulting from the construction of channels by an upper riparian owner was claimed, we quoted with approval the following language from *Manteufel v. Wetzel*, 133 Wis. 619, 114 N. W. 91, 19 L.R.A. (N.S.) 167:

" 'Where the upper proprietor does no more than collect in a ditch, which ditch follows the course of the usual flow of surface water, the surface water which formerly took the same course toward the land of the lower adjacent proprietor, and causes to pass through this ditch the surface water which formerly took the same course but spread out over the surface, he has committed no actionable legal wrong of which the lower proprietor can complain, or upon which such lower proprietor can maintain an action. In other words, causing surface water to flow in its natural direction through a ditch on one's own land, instead of over the surface or by percolation as formerly, where no new watershed is tapped by said ditch and no addition to the former volume of surface water is caused thereby, except the mere carrying in a ditch what formerly reached the same point on defendant's land over a wider surface by percolation through the soil, or by flowing over such wider surface, is not, when not negligently done, a wrongful or unlawful act.' "

The plaintiffs cite many authorities, but none of them pertain to the question presented here. For the most part, they concern the construction of sewers by municipalities, or the maintenance of same, in such manner as to cause damage to the property of others. None stands for the proposition that a city can be held liable for the nonnegligent constructing of streets, culverts, and ditches, simply because these improvements cause an acceleration of the velocity and turbulence of water in a stream which is the natural receiver of surface waters drained from the area.

The injunction decreed by the trial court purported to place upon the city a greater burden than that imposed by law. For this reason it must be dissolved. If at some future time the plaintiffs can show that activities of the city have

increased the flow of the stream beyond its natural capacity, with resultant damage to them, that will afford the basis for another law suit.

In a cross-appeal, the plaintiffs contend that verdicts should have been directed in their favor. As we have previously stated, the evidence supports only verdicts in favor of the city.

The judgments are reversed insofar as they grant injunctive relief to the plaintiffs, and in all other respects they are affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.