[No. 43027.    En Banc.    June 13, 1974.]

WILBER DEVELOPMENT CORPORATION, *Appellant*, v. LES
ROWLAND CONSTR., INC., *et al.*, *Respondents.*

*Kane, Vandeberg & Hartinger,* by *Harold T. Hartinger*
and *James A. Krueger,* for appellant.

*Rush & Hayes,* by *Frederick B. Hayes,* for respondent
Les Rowland Constr., Inc.

*Dennis J. La Porte,* for respondent Crest Builders, Inc.

*Peterson & Haarmann,* by *Robert H. Peterson* and *Mc-Cormick, Hoffman, Rees & Arnold,* by *Merrifield B. Rees,* for respondent Town of Steilacoom.

*Reed, McClure, Moceri & Thonn,* by *Bruce F. Meyers* and *Ronald L. Hendry, Prosecuting Attorney,* by *M. Fred Weedon, Deputy,* for respondent Pierce County.

ROSELLINI, J.—This is an inverse condemnation action which the trial court dismissed on motions of the defendants for summary judgment.

The action was commenced by the owner of 61.3 acres of unplatted land in Steilacoom, Washington. The theory of the action, as settled upon after several pretrial conferences, was that the defendants, the Town of Steilacoom and County of Pierce, had, in approving plans for storm drainage facilities to be constructed by land developers in conjunction with subdivision plats of lands lying east of the plaintiff's land, effected a taking or damaging of its property. The taking or damaging allegedly resulted from the fact that storm sewers and ditches which were constructed pursuant to the plans, carried onto the plaintiff's lands more water than would have naturally reached the land and deposited it in a manner different from the natural flow.

Affidavits which were before the court upon the defendants' motions for summary judgment showed that there was upon the plaintiff's land a natural swamp into which surface waters from all of the platted areas naturally drained. A natural watercourse flowed from the northern side of this swamp, over a rim or bluff, down through the town and into Puget Sound. The flow of water was controlled by the superintendent of utilities for the Town of Steilacoom, so that the water in the swamp was maintained at the level at which it had stood prior to the development of the subdivisions.

It was the allegedly limited capacity of this watercourse

which concerned the plaintiff's expert engineer, who stated in his affidavit that, while the watercourse had a sufficient capacity to carry all the water which would have been drained from the plaintiff's land if he had drained it and developed it, provided the lands to the east had remained in their natural condition, it did not have sufficient capacity to drain the plaintiff's land and carry away the water which was brought to it from the developed lands above. He stated that the watercourse could handle the waters carried to the plaintiff's lands by the storm drainage facilities only if the plaintiff's land was used as a holding basin.

This engineer's affidavit stated that the subdivision and development of the platted lands had created a runoff of surface water that made storm drainage necessary. It further stated that prior to the development of the platted lands, surface water that might otherwise have collected by reason of rains was dissipated by evaporation, transpiration, and percolation into the ground. It declared:

> The removal of timber and undergrowth, and the substitution of streets, driveways, homes, and the like, changes the character of the land to such an extent that the subdeveloper must anticipate that 30%, or more, of any rainfall will be carried away by storm drainage facilities
>
> . . .
>
> 9. If no waters were carried to the plaintiff's lands by the storm drainage systems of the Town of Steilacoom and Pierce County, Washington, the plaintiff's lands could be entirely drained by a ditch or pipe connecting the lowest elevations of the land with the natural watercourse which begins in the westerly portion of the plaintiff's lands.

This affidavit showed that surface waters collected within the platted lands was discharged upon the plaintiff's lands through five outlets, either ditches or pipes, and that at each outlet ditches were extended onto the plaintiff's lands.

The defendants' affidavits showed that water from all the lands in question naturally drained into the swamp on the plaintiff's land, that no new sources of water had been

diverted from their natural flow into the storm sewer system, and that the water table in the swamp had remained the same before and after the development of the platted lands.

An affidavit of a real estate appraiser filed on behalf of the plaintiff, stated that the market value of the land had been adversely affected by reason of the fact that surface water was being collected and discharged upon the land from storm sewers.

The trial court was of the apparent view that the uncontradicted statement in the defendants' affidavits that the water level had not risen in the swamp, was proof that the amount of water discharged upon the land from the storm sewer system was not greater than the amount which had drained there naturally before the platted lands were developed. While it recognized that the defendants had trespassed upon the plaintiff's land to construct ditches for the channeling of the water, it was of the apparent opinion that any damage resulting was of a temporary nature and not compensable in this action.

■ A municipality ordinarily is not liable for consequential damages occurring when it increases the flow of surface water onto an owner's property if the damages arise wholly from changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality. On the other hand, it is liable if, in the course of an authorized construction, it collects surface water by an artificial channel or in large quantities and pours it, in a body, upon the land of a private person, to his injury. Under this rule, while municipal authorities may pave and grade streets and are not ordinarily liable for an increase in surface water naturally falling on the land of a private owner where the work is properly done, they are not permitted to concentrate and gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause

substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made. 18 E. McQuillin, *Municipal Corporations* § 53.144, at 538 (3d ed. rev. 1963). *See Noyes v. Cosselman*, 29 Wash. 635, 70 P. 61 (1902). Surface waters may not be artificially collected and discharged upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof. *Colella v. King County*, 72 Wn.2d 386, 433 P.2d 154 (1967); *King County v. Boeing Co.*, 62 Wn.2d 545, 384 P.2d 122 (1963). At the same time, it is the rule that the flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another. *Laurelon Terrace, Inc. v. Seattle*, 40 Wn.2d 883, 246 P.2d 1113 (1952).

Here it is not contended that there has been any diversion of waters from the direction in which they would naturally flow and onto the land of plaintiff. There is, however, a contention that the amount of water has been increased, as a result of the changes in the surface of the soil effected with the approval of the defendants, and there has been a change in the *manner* of flow, which have resulted in damage to the plaintiff. The affidavit of the plaintiff's engineer supports both of these contentions. The mere fact that the plaintiff's engineer does not dispute the fact that the water table in the swamp has not risen does not settle the question whether the amount of water reaching the plaintiff's land has increased. The defendants' affidavits show that the water table is deliberately maintained by their agent, who controls the amount of water flowing from the natural watercourse on the west side of the plaintiff's land. Thus if there is a greater amount of water reaching the plaintiff's land, the extra water is being drained off by the defendants' agent.

However, as we understand the plaintiff's theory, it is not so much the increased amount of water reaching its land which has caused the drainage problem as it is the fact that

the water is being delivered more swiftly and in large amounts rather than in the slow diffuse manner in which it traveled when the platted lands were in their natural state.

Under the rules which we have noted, the mere fact that the amount of water reaching the plaintiff's land, by reason of the development of the platted lands, might be greater than it formerly was, would not entitle it to compensation for any resulting damage. But the fact that the water is collected and deposited upon the land in a different manner does afford a basis for relief, if resulting damage can indeed be proved to the satisfaction of the trier of the facts.

This is not a case where the municipality has collected water and directed it into a natural waterway, as in *Strickland v. Seattle*, 62 Wn.2d 912, 385 P.2d 33 (1963), where we denied recovery to a riparian owner who complained that in collecting water in ditches and sewers and directing it into a natural watercourse, the city had increased the velocity and turbulence of the stream and the rate of flow of silt, with the result that a delta was being built up in the land at the end of the stream.

■ The allegation that the *manner* in which the water is deposited upon the plaintiff's land affects the ability to drain that land, may be difficult to prove to the trier of the facts but it is a material question at issue in the case, and not one upon which summary judgment could properly be granted.

Certainly the ditching done upon the plaintiff's land is compensable, if it has in fact resulted in damage. Whether it is regarded as a trespass, temporary in nature, or an appropriation of easements across the plaintiff's lands to carry the water on its way to its ultimate destination, the necessary parties are before the court and there is no reason to relegate the plaintiff to another action to have its rights determined. *See* Civil Rule for Superior Court 18.

■ We find in the record some acknowledgement on the part of the defendants that they should have made provision for the proper outflow of the water to a natural watercourse, when they gathered the water into artificial

drains and cast it upon the land in a manner different from that by which it would have reached the land in its natural state. We think such a duty is in harmony with the cases which we have cited above, if in fact the manner in which the water is collected and directed onto the land has resulted in damage, a question to be determined by the trier of the facts.

In considering a motion for summary judgment, the court must consider all evidence and all reasonable inferences from the evidence in favor of the nonmoving party and summary judgment will be granted only if reasonable men could reach only one conclusion. *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 421 P.2d 674 (1966). The plaintiff offered evidence that his land had been damaged as a result of the collecting and discharge of surface waters upon his land in an unnatural manner. He claimed a large amount of damage and may be able to prove only a minimum; nevertheless, he should have his day in court.

When the first of the 18 subdivisions which are involved in this litigation was platted, and prior to its approval by the Town of Steilacoom, the developer secured from the plaintiff's two controlling stockholders (who admit that it is their alter ego) a release whereby the owners consented to

the natural flow of surface water from said plat to be carried in its natural channel across the property of the [owners] and to hold the Town of Steilacoom blameless for any damage that may be caused by said drainage flow . . .

The trial court held that this document released the Town of Steilacoom from any liability for damage resulting from the flow of waters from the other 17 subdivisions, as well as the first.

This document does not purport to pertain to any plat other than the one which was then under consideration, to which reference was made therein. Furthermore, it does not purport to authorize the collecting of water by

artificial means and depositing of it upon the land of the plaintiff. It was drawn by the town and must be construed against it. We do not find the release broad enough in its terms to preclude this action.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied August 9, 1974.