[No. 13558-2-II.  Division Two.  September 9, 1992.]

KATHLEEN HEDLUND, *Appellant*, v. JACK WHITE, ET AL, *Respondents*.

*Malcolm L. Edwards, Catherine Wright Smith,* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*Steven L. Larson,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Allen T. Miller, Jr., Assistant,* amicus curiae.

MORGAN, J. — Kathleen Hedlund alleged that Jack White, Ellen White and Pearl Baumgartner (collectively referred to as White) were wrongfully draining surface water into a swale and creek that pass over her land. After the trial court denied her an injunction and damages, she appealed. We affirm as modified.

Hedlund and White own contiguous farms along the Puyallup River. White's farm is south of and uphill from Hedlund's.

White's farm has two natural drainage basins, one on its west side and one on its east side.[1] Surface water in the western basin naturally drains to the river through Swale 80, an oxbow slough of the river.[2] This slough has its upland end on White's farm, and it crosses Hedlund's farm before connecting with the river.

Surface water in the eastern basin drains to the river through Van Ogle Creek. That creek traverses both farms before emptying into the river about a mile north of Hedlund's farm.

In the fall of 1987, White installed a new drainage system on his farm. It consisted mostly of an east-west ditch that caused surface water from both the western and eastern drainage basins to be discharged into Swale 80. The apparent purpose of the ditch was to make the land usable for crops as well as cattle. The ditch was opened on November 13, 1987. It caused the flow of water in Swale 80 to increase, but not beyond the swale's capacity.

In June 1988, Hedlund filed this suit. She alleged that White's new drainage system violated her common law riparian rights, constituted a nuisance and a trespass, and

---

[1] Hedlund assigns error to the omission of her proposed findings that would have established that White's farm contains three drainage basins. However, she does not support the assignment with argument or citations to the record, and thus we are not required to consider it. *Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 630, 733 P.2d 182 (1987). In any event, the trial court's implied finding that there were two drainage basins is supported by the record.

[2] Actually, part of the oxbow slough is called Swale 80 and part is called Swale 76. For our purposes, the difference is insignificant, and we will refer to the entire slough as Swale 80.

violated the Shoreline Management Act of 1971 (SMA), RCW 90.58. She prayed for damages and a permanent injunction "requiring the defendants to restore the flow of water to its natural course."

Hedlund then sought a preliminary injunction to keep White from discharging water into Swale 80 pending trial, and on November 18, 1988, such an injunction was granted. Two months earlier, White had installed a dam across his ditch, with gates that could be opened and closed. Thus, when the preliminary injunction issued, he was able to respond by closing the gates. This reversed the flow of water in the ditch, and for the next several months, water from both the western and eastern drainage basins flowed easterly into Van Ogle Creek. After White prevailed at trial, he reopened the gates, again reversing the flow of water in the ditch. Since then, as far as the record shows, water from both the western and eastern drainage basins has flowed westerly into Swale 80.

A bench trial was held on September 5, 1989. Hedlund did not present evidence that any flooding had occurred. However, she did present evidence that silt had been deposited in Swale 80 and Van Ogle Creek, that silt in Van Ogle Creek could endanger salmon eggs deposited there, and that removing silt from the swale would cause more damage than it would remedy. Moreover, she presented evidence that White's project was subject to the requirements of the Shoreline Management Act of 1971, that that act required a substantial development permit, and that White had failed to obtain such a permit. White presented contrary evidence tending to show, among other things, that his ditch was properly constructed and caused little siltation in the swale or the creek.

The trial court found that White had directed water into Swale 80, and that some of the resultant silt had settled upon Hedlund's property. The court also found that after White reversed the flow of water in November 1988, the new drainage system discharged water and silt into Van Ogle Creek, but that the discharge was minimal and occurred only

occasionally. The trial court concluded that a "technical" trespass had taken place; that a permanent injunction was unwarranted; that Hedlund had failed to prove actual damages but should receive nominal damages of $1;[3] and that Hedlund's other causes of action should be dismissed.

Hedlund appeals. Her principal contentions are that the trial court erred (1) by dismissing her cause of action based on the SMA and (2) by denying the injunction and damages that she sought pursuant to common law.[4]

■ Preliminarily, we review the trial court's finding that Hedlund failed to prove actual damages, other than an incidental, de minimis increase in silt. That finding is supported by the record,[5] and for the balance of our review, we treat the case as one for injunctive relief only.

---

[3]White's trespass did not entitle Hedlund to nominal damages, for the Supreme Court has eliminated such damages from Washington's law of trespass. *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 691-92, 709 P.2d 782 (1985). However, White has not cross-appealed the trial court's award of $1 in nominal damages, presumably because it is insignificant.

[4]In addition to her principal contentions, Hedlund makes three evidential assignments of error. First, she assigns error to the trial court's refusal to allow testimony that she suffered emotional distress as a result of White's conduct. The trial court excluded the testimony because her complaint, though it gave fair notice that she sought damages for injury to property, did not give fair notice that she sought damages for emotional injury to her person. We agree with the trial court's reading of her complaint and find no error. CR 8(a).

Second, Hedlund assigns error to the trial court's refusal to allow David Hedlund to testify about the cost of removing silt from her property. He had no personal knowledge of how much it would cost to remove silt from the slough, ER 602, ER 701, and at best his qualifications as an expert were arguable. The ruling was discretionary, and again we find no error. ER 702; *State v. Bell*, 83 Wn.2d 383, 389, 518 P.2d 696 (1974).

Third, Hedlund assigns error to the trial court's failure to give sufficient weight to the testimony of her expert witness, Noble. As trier of fact, the trial court was the sole judge of Noble's credibility, *Kinder v. Mangan*, 57 Wn. App. 840, 846, 790 P.2d 652, *review denied*, 115 Wn.2d 1018 (1990), and again we find no error.

[5]Hedlund assigns error to parts of finding of fact 3 in which the trial court found that although an undetermined amount of sand and silt is being deposited on her property, no damage was proved. She also assigns error to parts of finding of fact 4, in which the trial court found that the portions of her property surrounding Van Ogle Creek have always been wet ground; that the minimal amount of water in

Shoreline Management Act of 1971

■ The parties dispute whether White violated the SMA when he installed his drainage system. However, we do not reach that issue. Either a private citizen or a governmental entity may base an action for damages on the SMA, RCW 90.58.230,[6] but only a governmental entity may base an action for injunctive or declaratory relief on the SMA. RCW 90.58.210(1).[7] In this case, then, Hedlund has no SMA cause of action even if White violated the SMA. She has no SMA right to damages because she failed to prove damages, and she has no SMA right to an injunction because the SMA does not entitle her to seek such relief.

---

White's drainage system only caused the creek to overflow occasionally, after a rain; and that she had not shown actual as opposed to de minimis damage from silt.

Findings 3 and 4 were supported by the record. *See Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 158, 795 P.2d 1143 (1990). No one testified to significant damage to Hedlund's property. Her own expert testified on cross examination that only an incidental amount of damage had been done by silt, and that to remove the silt would be more damaging than to leave it. Her neighbor testified that the ground around Van Ogle Creek has always been wet. An employee of the Soil Conservation Service testified that White's drainage system was not harming Hedlund's property, and that the wetness in the area was caused by Hedlund's lessee's farm equipment or a seasonal high water table.

[6]RCW 90.58.230 provides:

"Any person subject to the regulatory program of this chapter who violates any provision of this chapter or permit issued pursuant thereto shall be liable for all damage to public or private property arising from such violation, including the cost of restoring the affected area to its condition prior to violation. The attorney general or local government attorney shall bring suit for damages under this section on behalf of the state or local governments. Private persons shall have the right to bring suit for damages under this section on their own behalf and on the behalf of all persons similarly situated. If liability has been established for the cost of restoring an area affected by a violation the court shall make provision to assure that restoration will be accomplished within a reasonable time at the expense of the violator. In addition to such relief, including money damages, the court in its discretion may award attorney's fees and costs of the suit to the prevailing party."

[7]RCW 90.58.210(1) provides:

"The attorney general or the attorney for the local government shall bring such injunctive, declaratory, or other actions as are necessary to insure that no uses are made of the shorelines of the state in conflict with the provisions and programs of this chapter, and to otherwise enforce the provision of this chapter."

COMMON LAW

Shortly after statehood, Washington adopted the "common enemy" or "outlaw" rule for dealing with surface water.[8] *Cass v. Dicks*, 14 Wash. 75, 78, 44 P. 113 (1896); *Morton v. Hines*, 112 Wash. 612, 617, 192 P. 1016 (1920); *Wood v. Tacoma*, 66 Wash. 266, 271-72, 119 P. 859 (1911). That rule regards surface water "as an outlaw and a common enemy against which anyone may defend himself, even though . . . injury may result to others." *Cass v. Dicks*, 14 Wash. at 78; *see also Island Cy. v. Mackie*, 36 Wn. App. 385, 388, 675 P.2d 607, *review denied*, 101 Wn.2d 1008 (1984). "In its extreme form, the rule provides that, incident to the rights of land ownership, each landowner has an unqualified legal privilege to develop his or her land without regard for the drainage consequences to other landowners." Comment, *Toward a Unified Reasonable Use Approach to Water Drainage in Washington*, 59 Wash. L. Rev. 61, 62-63 (1983-1984).

■ Washington still follows the common enemy rule, but not in its most extreme form. A landowner may repel surface water, regardless of injury to adjoining land, *Morton v. Hines*, *supra*; *Wood v. Tacoma*, 66 Wash. at 272 (quoting 30 Am. & Eng. Ency. Law 331-32 (2d ed. 1905), by means that leave the water diffused on top of the ground — for example, by elevating improvements or building protective embankments.[9] *Whiteside v. Benton Cy.*, 114 Wash. 463, 467, 195 P. 519 (1921); *see Wood v. Tacoma*, 66 Wash. at 273 (water from city's storm sewer "flowed upon the appellant's land in a diffused form, as it would have done in any event"; City not liable); *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 874, 523 P.2d 186 (1974). A landowner may also collect or channel surface water on the premises by means of a ditch or other collection system that causes the water to

---

[8]Surface water is vagrant or diffuse water produced by rain, melting snow or springs. *King Cy. v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

[9]However, a landowner may not block a natural watercourse or natural drainway. *Island Cy. v. Mackie*, 36 Wn. App. at 390-91.

flow in its natural direction. *Trigg v. Timmerman*, 90 Wash. 678, 682, 156 P. 846 (1916) (quoting *Manteufel v. Wetzel*, 133 Wis. 619, 114 N.W. 91 (1907)); *Strickland v. Seattle*, 62 Wn.2d 912, 915, 385 P.2d 33 (1963) (quoting *Bowling Green v. Stevens*, 205 Ky. 161, 265 S.W. 495 (1924); *Trigg v. Timmerman, supra*). However, a landowner may not discharge the water onto adjoining land "in quantities greater than, or in a manner different from, the natural flow of such surface waters." *King Cy. v. Boeing Co.*, 62 Wn.2d 545, 552, 384 P.2d 122 (1963); *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d at 875; *Colella v. King Cy.*, 72 Wn.2d 386, 390, 433 P.2d 154 (1967). The apparent objects of these rules are to allow an uphill owner to drain and thus utilize his property, while at the same time limiting the burden of the downhill landowner to approximately[10] that created by the forces of nature.

What it means to discharge water "in quantities greater than, or in a manner different from, the natural flow of such surface waters" has been partially defined in terms of both method and amount. A landowner may discharge surface water onto adjoining land through a natural watercourse or natural drainway, *Strickland v. Seattle, supra*, but not through a culvert or drain artificially constructed and located apart from a natural watercourse or natural drainway. *Wilber Dev.*, 83 Wn.2d at 874 (surface water discharged onto downhill property by five ditches or pipes); *Colella*, 72 Wn.2d at 390; *King Cy. v. Boeing Co.*, 62 Wn.2d at 551-52; *Buxel v. King Cy.*, 60 Wn.2d 404, 374 P.2d 250 (1962); *Island Cy. v. Mackie*, 36 Wn. App. 385, 394, 675 P.2d 607, *review denied*, 101 Wn.2d 1008 (1984); *Trigg v. Timmerman*, 90 Wash. at

---

[10]We include the word "approximately" because an uphill owner may incidentally increase the quantity or velocity of surface water in a natural watercourse or drain, so long as the water is not ultimately diverted from its natural flow. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d at 875; *Laurelon Terrace, Inc. v. Seattle*, 40 Wn.2d 883, 893, 246 P.2d 113 (1952) (quoting *Bowling Green v. Stevens*, 205 Ky. 161, 265 S.W. 495 (1924)); *Trigg v. Timmerman*, 90 Wash. at 681-82.

681. The water that a landowner may discharge into a particular watercourse or drainway surface water is that which naturally would have flowed there, *Colella v. King Cy.*, 72 Wn.2d at 390; *King Cy. v. Boeing Co.*, 62 Wn.2d at 551-52, but not that which naturally would have flowed into a different watercourse or drainway.[11] *Strickland*, 62 Wn.2d at 915, 916 (quoting *Bowling Green v. Stevens, supra*, and *Trigg v. Timmerman, supra*); *Laurelon Terrace, Inc. v. Seattle*, 40 Wn.2d at 892-93 (quoting *Bowling Green v. Stevens, supra*); *Trigg v. Timmerman*, 90 Wash. at 682 (upper landowner acts lawfully "where no new watershed is tapped") (quoting *Manteufel v. Wetzel, supra*); *Benton City v. Adrian*, 50 Wn. App. 330, 335-36, 748 P.2d 679 (1988) (artificially introduced irrigation water as opposed to naturally occurring surface water); *Patterson v. Bellevue*, 37 Wn. App. 535, 537, 681 P.2d 266, *review denied*, 102 Wn.2d 1005 (1984) (City not liable "if it did not disturb the natural drainage of the area and no new water is collected or diverted into the drainway"); *Island Cy. v. Mackie, supra*; Comment, 59 Wash. L. Rev. at 65 n.19.

█ In this case, White did not commit a wrong by collecting surface water on his property, by discharging water

---

[11]White disputes this proposition, contending that he is entitled to discharge any and all naturally occurring surface water into Swale 80 so long as he does not cause flooding or other damage. However, the four cases he relies on, *Strickland v. Seattle, supra, Laurelon Terrace, Inc. v. Seattle, supra, Buxel v. King Cy., supra*, and *Island Cy. v. Mackie, supra*, are distinguishable.

*Strickland* and *Laurelon* involved situations in which the water discharged would have flowed into the stream naturally. 62 Wn.2d at 916 (stream in question was "natural receiver of surface waters drained from the area"); 62 Wn.2d at 914 (according to *Strickland* court, *Laurelon* involved city sewers that "utilized a natural stream for overflow of waters which the sewers collected in the watershed served by the stream"). Both cases have been cited for the proposition that a landowner may drain water into a natural watercourse or drain "*provided that the waters would naturally flow there* and the capacity of the stream is not overtaxed." (Italics ours.) Comment, 59 Wash. L. Rev. 61, 65 n.19.

*Buxel* involved a situation in which water was not discharged into a natural stream at all, but instead was discharged onto plaintiff's property through an artificially constructed drain. 60 Wn.2d at 408; *see also Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d at 874. And *Island County*, as we read it, supports the text set forth above. 36 Wn. App. at 394.

from the western drainage basin into Swale 80, or by discharging water from the eastern drainage basin into Van Ogle Creek. He did, however, trespass[12] on Hedlund's property by discharging water from the eastern basin into Swale 80 and from the western basin into Van Ogle Creek. As far as the record shows, that trespass continues with respect to the discharge of water from the eastern basin into Swale 80.

■ If White's trespass is continuing, it entitles Hedlund to a permanent injunction prohibiting him from discharging water from the eastern drainage basin into Swale 80.

> "When surface water is collected and discharged upon adjoining lands in quantities greater than, or in a manner different from, the natural flow, a liability accrues for the injury occasioned thereby. Injunction is held to be a proper remedy where the injury is a continually recurring one, and cannot be compensated in damages."

*Holloway v. Geck*, 92 Wash. 153, 157, 158 P. 989 (1916) (quoting *Peters v. Lewis*, 28 Wash. 366, 68 P. 869 (1902)); *see also Harkoff v. Whatcom Cy.*, 40 Wn.2d 147, 154, 241 P.2d 932 (1952).

Here, as the trial court properly ruled, White's trespass cannot be remedied by an award of damages because it is not causing more than de minimis physical damage to Hedlund's property. Nevertheless, it is a trespass which, absent an injunction, Hedlund will be forced to endure for an indefinite period in the future. Under these circumstances, it is "manifestly unreasonable" to deny an injunction, *see Federal Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 264, 721 P.2d 946 (1986), and one should issue if at the time this matter is returned to the trial court White's trespass is yet ongoing. *See Radach v. Gunderson*, 39 Wn. App. 392, 401, 695 P.2d 128, *review denied,* 103 Wn.2d 1027 (1985).

---

[12]A trespass is an intrusion onto the property of another that interferes with the other's right to exclusive possession. *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 690-91, 709 P.2d 782 (1985) (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979)). The concept includes "trespass by water". *Buxel v. King Cy.*, 60 Wn.2d 404, 409, 374 P.2d 250 (1962).

We remand this matter to the trial court for determination of whether White continues to discharge into Swale 80 water that would not naturally flow there, and if so, for entry of a permanent injunction prohibiting him from so doing.[13] In all other respects, the judgment is affirmed.

PETRICH, C.J., and ALEXANDER, J., concur.

---

[13]Given our rulings, White would be committing an additional trespass if he were presently discharging water from the western basin into Van Ogle Creek. However, there is nothing to indicate that he is doing that, and for that reason we do not discuss whether such trespass would warrant injunctive relief. If it were later to develop that such a trespass were occurring, Hedlund should be allowed to apply for a broadening of the injunction described herein.