IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARREN AND WENDY HUGHES, husband and wife, | ) ) ) | No. 39024-1-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| STEVEN AND DORA CROMER, husband and wife, | ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) ) | |
| CHEYNE AND SARAH KEEVY, husband and wife, | ) ) ) | |
| Appellants. | ) ) | |

LAWRENCE-BERREY, A.C.J. — Cheyne and Sarah Keevy appeal the trial court's

summary judgment grant of a preliminary injunction enjoining their use of North

Waldrons Lane, a private easement over which they admit they have no legal right. What

makes the Keevys' argument compelling is that not one of the owners of the servient

lands over which they cross object to their use. Instead, Darren and Wendy Hughes are

the sole objectors, and the Keevys do not cross the Hugheses' land.

This appeal raises the questions of whether the Keevys are entitled to interlocutory review and whether the trial court committed obvious or probable error by granting a preliminary injunction. We deny interlocutory review because the trial court did not commit obvious or probable error. Nevertheless, neither the trial court's order nor our denial of review portends a broad injunction. A trial is necessary for the lower court to exercise its broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of this case.

FACTS

In 1969, Everest & Waldron, Inc., recorded the easement that would become North Waldrons Lane (NWL). According to the document, the grantor had recently sold or was in the process of selling several adjoining parcels of property in Sections 30 and 31, Township 29 North, Range 44, E.W.M., in Spokane County, and desired to create an easement for those parcels to the public road. The relevant portion of the document provides:

> WHEREAS no specific grant of an easement for ingress and egress by pedestrians and vehicles across and above the real property in Sections 30 and 31, Township 29 North, Range 44, E.W.M., Spokane County, State of Washington, has ever been made of record in favor of the aforesaid grantees and vendees under said deeds and contracts, and
> WHEREAS the use and enjoyment of an existing roadways within the above described property is necessary for the use and enjoyment of all persons holding rights therein,

2

NOW, THEREFORE, the Grantor as aforesaid for and in consideration of the mutual benefit of Grantor's existing and prospective Grantees and Vendees, agrees as follows:

That an easement is hereby granted as follows:

An Easement [60' wide] for roadway purposes over and across [the centerline described below by metes and bounds]:

. . . .

[S]aid easement being for the use and benefit of all said real property; said use and benefit to include the full and free right of each of the present and future assigns of the Grantor in common with all others having a like right at all times hereinafter to pass or re-pass along said roadway. This easement and grant of right-of-way is a covenant running with the land and shall be perpetual in duration.

Clerk's Papers (CP) at 17-19.

The NWL easement is appurtenant to both the Hugheses' parcels and Steven and Dora Cromers' parcel. The location of the parties' properties, the NWL easement, and the public road are best understood by referring to the labeled parcel map, attached to this opinion as Appendix A.

In the spring of 2021, the Keevys purchased six parcels of land to the west of the Cromers' parcel. All of the Keevys' property is situated within Section 25, Township 29 North, Range 43, E.W.M. The Keevys' parcels are not within Sections 30 and 31 and are not appurtenant to the NWL easement. The Keevys' parcels all adjoin the public road at their northernmost boundaries so they are not landlocked. The Cromers' parcel shares a border with one of the Keevys' parcels.

Mr. Hughes, after noticing markers on the edge of the Cromers' parcel and the NWL easement, learned from his neighbors that the Cromers had negotiated with the Keevys to give them an access easement across their parcel. Mr. Hughes called Mr. Keevy and told him his property was not benefited by the NWL easement and he was not legally permitted to use it to access his property.

Later, the Cromers formally granted the Keevys an exclusive easement to construct a driveway for ingress and egress across their parcel to the Keevys' adjoining parcel. Soon after, counsel for the Hugheses sent a letter to the Cromers and Keevys demanding that the Keevys cease using the NWL easement. The letter included a copy of the NWL easement and reiterated that the Keevys' parcels were not benefited by the easement. The letter notified the Keevys that the Hugheses would commence litigation and seek an injunction if their demand went ignored.

*Procedure*

In the fall of 2021, the Hugheses filed a lawsuit against the Keevys and the Cromers seeking (1) a declaratory judgment confirming the nature and scope of the NWL easement and the parties' rights associated with it, (2) a permanent injunction enjoining the Keevys from using the NWL easement to access their property, (3) an award of damages against the Cromers and the Keevys resulting from the Keevys' use of the NWL

easement, (4) a temporary injunction preventing the Keevys from using either easement during the pendency of the case, and (5) an award of attorney fees. One month later, the Hugheses amended their complaint by removing their claim for damages.

In February 2022, the Hugheses moved for summary judgment on their claims, requesting a declaratory judgment and a permanent injunction. Mr. Hughes submitted a declaration in support of the motion, noting that he "observed the Keevys and their agents transporting construction equipment and personnel through North Waldrons Lane to the Cromer property, and they began removing trees and excavating within and upon the Cromer Property." CP at 60. Beyond that, Mr. Hughes did not allege or submit any specific evidence of damage or threatened damage to the NWL easement.

The Keevys and Cromers answered the complaint after the Hugheses filed their summary judgment motion. The Cromers cross motioned for summary judgment, requesting that they be dismissed from the lawsuit on the basis that there was no justiciable controversy between them and the Hugheses. The Keevys responded to the summary judgment with a declaration and a memorandum. In his declaration, Mr. Keevy said the steep elevation of his parcels made it nearly impossible and cost prohibitive to build an access road to connect to the public road. Mr. Keevy further said he was seeking

the approval of the landowners whose properties he would need to cross when using NWL and clarified he was not yet building his house or using the NWL easement.

The trial court entered a written decision and order. In its decision, the court noted, "as a landowner entitled to use the easement in question, [the Hugheses] have the right to challenge an increase in use" and the "increased use has the potential to adversely affect the easement in question, resulting in an increased cost of maintenance or a degradation of the easement affecting all original landowners entitled to use the easement." CP at 216. In its order, the court dismissed the Cromers from the action and enjoined the Keevys from using the NWL easement "until and unless further order of the Court, except for occasional personal use as an invitee." CP at 217.

Notably, the trial court expressly declined to determine some of the issues raised by the parties. It declined to decide the scope of the easement, i.e., whether it was exclusive or nonexclusive. The court declined to decide this issue because it would implicate the rights of nonparty easement holders. Also, the court declined to issue an advisory opinion about how many easement owners' permission would be required to enable the Keevys to use of the NWL easement. Nevertheless, the court noted that the Keevys probably would not be entitled to use the NWL easement given the holding in *Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986)—"'If an easement is

No. 39024-1-III
*Hughes v. Keevy*

appurtenant to a particular parcel of land, any extension to other parcels is a misuse of the easement.'" CP at 217.

The Hugheses moved for an award of attorney fees on the basis of the Keevys' purported prelitigation bad faith misconduct. In support of their motion, they cited our recent decision in *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 20 Wn. App. 2d 914, 504 P.3d 834 (2022), *rev'd in part*, No. 101149-1 (Wash. Aug. 31, 2023), https://www. courts.wa.gov/opinions/pdf/1011491.pdf. The trial court denied their motion for attorney fees.

The Keevys appealed the trial court's order and the Hugheses cross appealed the trial court's denial of their attorney fee request.[1]

During our preargument review of the briefs and the record, we observed that the trial court's order did not decide all issues raised by the parties and that its injunction appears to be only preliminary, not final. We asked the parties for supplemental briefing on two questions: (1) Why is the appeal not subject to remand because it is not an appeal of a final order? and (2) What considerations support us granting discretionary review

---

[1] The Supreme Court reversed our decision in *Dalton M* and held that attorney fees may not be awarded based on prelitigation bad faith misconduct. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, No. 101149-1 (Wash. Aug. 31, 2023), https://www. courts.wa.gov/opinions/pdf/1011491.pdf. Without further discussion, we affirm the trial court's denial of the Hugheses' attorney fee request.

7

No. 39024-1-III
*Hughes v. Keevy*

under RAP 2.3(b)?  Letter from Tristen Worthen, Clerk/Administrator, Wash. Ct. of

Appeals, Div. III, *Hughes v. Keevy*, No. 39024-1-III (Wash. Ct. App. Jun. 23, 2023).

ANALYSIS

APPEALABILITY/DISCRETIONARY REVIEW

The Keevys contend the trial court's order is appealable as a matter of right under

RAP 2.2(a)(1) or RAP 2.2(a)(3), or alternatively, is reviewable under RAP 2.3(b)(1) or

RAP 2.3(b)(2).  We address each of these four rules.

*1.      The order is not appealable as a final judgment under RAP 2.2(a)(1)*

The Keevys first contend the trial court's order is appealable as a matter of right

because it is a "final judgment entered in any action or proceeding."  RAP 2.2(a)(1).

They argue the trial court's order was, in effect, a final judgment because it granted the

Hugheses all the relief they sought in their complaint.  We disagree.

The trial court's order is not a final order because it does not decide all of the

issues raised by the parties.  The court expressly declined to determine the scope of the

easement because it would implicate the rights of nonparty easement holders.

Presumably, if the easement holders were not added as parties after a period of time, it

would dismiss this request for declaratory relief.

8

The trial court also declined to issue an advisory opinion as to how many easement owners would have to give permission to the Keevys for them to be entitled to use the NWL easement. It did, however, express pessimism that the Keevys could expand the use of the easement if the Hugheses maintained their objection. Finally, the injunction issued by the trial court was preliminary, not permanent as the Keevys argue. For these reasons, we conclude that the trial court's order is not a final judgment.

2. *The order is not appealable as a decision determining action under RAP 2.2(a)(3)*

The Keevys argue the trial court's order is appealable as a matter of right under RAP 2.2(a)(3), which provides:

*Decision Determining Action.* Any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action.

The Keevys cite *Sheats v. City of East Wenatchee*, 6 Wn. App. 2d 523, 431 P.3d 489 (2018) in support of their argument. They assert, "The *Sheats* case is similar to this one—the trial court entered an order that determined a question regarding a party's right to injunctive relief and there were no other issues left to determine." Suppl. Br. of Appellants at 9. *Sheats* is distinguishable.

In *Sheats*, "[t]he trial court's decision determined that Officer [Tye] Sheats was not entitled to his requested injunction and there was nothing left to determine." *Id.* at 538. Here, the trial court has yet to determine whether the easement is exclusive or nonexclusive and whether the Keevys could use the NWL easement if they obtain permission from some of the easement holders. Because the trial court expressly noted it was not yet deciding all of the issues raised by the parties, the action is yet to be determined and this matter is not appealable under RAP 2.2(a)(3).

3. *The order is not reviewable under RAP 2.3(b)(1) or RAP 2.3(b)(2) because there is no obvious or probable error*

The Keevys argue we should grant discretionary review under RAP 2.3(b)(1) or RAP 2.3(b)(2). The former allows discretionary review if the superior court committed an obvious error that would render further proceedings useless. The latter allows discretionary review if the superior court committed probable error and the decision substantially alters the status quo or substantially limits the freedom of a party to act.

Specifically, the Keevys argue the trial court committed obvious or probable error because the Hugheses lack standing and because the Hugheses failed to establish two of

10

the three elements for obtaining injunctive relief—a clearly protectable legal right and

actual and substantial injury.[2]

> a.  *The Hugheses have standing to request declaratory relief and
> injunctive relief may be granted in such an action to prevent a
> trespass*

The Keevys argue the Hugheses are not entitled to injunctive relief because they

lack a property right entitling them to such relief.  The Keevys' argument is premised on

the fact that their use of the NWL easement does not pass over the Hugheses' property.

We disagree with their argument.

The Hugheses sought a declaration of easement rights and expressly invoked the

Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW.  Under the UDJA, a

court has the power to "declare rights, status and other legal relations whether or not

further relief is or could be claimed."  RCW 7.24.010.  Also, "[a] person interested under

a deed . . . may have determined any question of construction or validity arising under the

instrument . . . and obtain a declaration of rights, status or other legal relations

thereunder."  RCW 7.24.020.  Notably, "[t]he court, in its discretion and upon such

---

[2] The Keevys also argue we should reverse the trial court's order and dismiss the Hugheses' claims because the NWL easement is not an exclusive easement to the properties described in the 1969 easement grant.  We decline to reach this issue for the same reason the trial court declined: It implicates the rights of nonparty easement owners.

conditions and with or without such bond or other security as it deems necessary and proper . . . may restrain all parties involved in order to secure the benefits and preserve and protect the rights of all parties to the court proceedings." RCW 7.24.190. We recently confirmed that under chapter 7.24 RCW, a trial court has authority to issue an injunction to prevent a trespass. *City of Union Gap v. Printing Press Props., LLC*, 2 Wn. App. 2d 201, 233, 409 P.3d 239 (2018) (citing *Hedlund v. White*, 67 Wn. App. 409, 418, 836 P.2d 250 (1992)). And as noted in *Brown v. Voss*, "[i]f an easement is appurtenant to a particular parcel of land, any extension thereof to other parcels is a misuse of the easement." 105 Wn.2d at 372. It follows that the Keevys' use of the NWL easement to access their nonappurtenant property is a misuse of the easement and hence is a trespass. But as explained below, these and other authorities permit the trial court to grant injunctive relief, yet they do not compel broad injunctive relief.

> b.    *A trial court is vested with broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it*

The Keevys argue the trial court erred by enjoining their use of the NWL easement because the Hugheses presented no evidence that such use would cause them to suffer actual and substantial damages. We disagree. The Hugheses presented sufficient evidence of damages to warrant issuance of the preliminary injunction.

12

We review a trial court's decision on a preliminary injunction for an abuse of discretion. *Beauregard v. Wash. State Bar Ass'n*, 197 Wn.2d 67, 72, 480 P.3d 410 (2021). "A party seeking preliminary injunctive relief must establish (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either have or will result in actual and substantial injury." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 153, 157 P.3d 831 (2007).

First, the Hugheses had to show a clear or equitable legal right. In deciding whether such a right exists, we examine the likelihood that the moving party will prevail on the merits. *Rabon v. City of Seattle*, 135 Wn.2d 278, 285, 957 P.2d 621 (1998). As discussed above, the Hugheses have a clear legal right to prevent the Keevys from trespassing across the NWL easement.

Second, the Hugheses had to show a well-grounded fear of immediate invasion of that right. In his declaration, Mr. Hughes described the Keevys taking steps toward building their driveway across the Cromers' parcel, indicating a clear intent to use the NWL easement to benefit their nonappurtenant parcel.

Third, the Hugheses had to show that the acts complained of will result in actual and substantial injury. The Keevys admit that they purchased their six parcels for the purpose of building their home on one of the parcels, although they deny they had started

13

the process. This is sufficient for issuance of a preliminary injunction. The trial court

reasonably inferred from the undisputed evidence that the Keevys were building their

driveway because they intended to build their house. The trial court also reasonably

inferred from the undisputed evidence that there would be large trucks carrying

equipment and supplies up and down the NWL easement for a number of months to build

the house. Not only will this likely damage the road, it will likely interfere with the

Hugheses' access while the house is being built. And once built, the Keevys would

commit a continuing trespass by using the easement daily for ingress and egress.

We conclude that the trial court did not abuse its discretion by preliminarily

enjoining the Keevys from using the NWL easement until further order of the court.

Nevertheless, the scope of the final injunction might be narrow or broad. We now

discuss *Brown v. Voss* at length and explain why a broad injunction is not a foregone

conclusion.

BROWN V. VOSS

In *Brown v. Voss*, the predecessors in title of parcel A granted to the predecessors

in title of parcel B a private easement across parcel A for ingress and egress to parcel B.

105 Wn.2d at 369. More than two decades later, the Vosses bought parcel A, and the

Browns bought parcel B and parcel C, the latter parcel was owned by a third person not a

party to the easement grant. *Id.* The Browns intended to remove a house on parcel B and replace it with a house that would straddle parcels B and C. *Id.* After the Browns had expended $11,000 toward this goal, the Vosses brought suit complaining that the Browns had unlawfully expanded the scope of the easement to parcel C. *Id.* The trial court found

> [o]ther than the trespass there is no evidence of any damage to the defendants as a result of the use of the easement by the [Browns]. There has been no increase in volume of travel on the easement to reach a single family dwelling whether built on tract B or on Tacts [sic] B and C. There is no evidence of any increase in the burden on the subservient estate from the use of the easement by the [Browns] for access to parcel C.

*Id*. at 369-70.

Relying principally on the above findings, the trial court denied the Vosses' request for an injunction and granted the Browns the right to use the easement for access to parcels B and C as long as the Browns' properties were developed and used solely for the purpose of a single family residence. *Id.* at 370-71.

The Vosses appealed and we reversed, ordering the trial court to grant an injunction for the Vosses. *Id.* at 371. The Browns petitioned for review, and the Supreme Court granted the petition. *See id*. at 368-69.

The Browns argued that "extension of the use of the easement for the benefit of [parcel C] does not constitute a misuse of the easement, where as here, there is no evidence of an increase in the burden on [parcel A]." *Id*. at 372. In disagreeing with the

Browns, the Supreme Court noted, "If an easement is appurtenant to a particular parcel of land, any extension thereof to other parcels is a misuse of the easement." *Id.*

Of importance to our present review, the Supreme Court wrote, "However, it does not follow from this conclusion alone that [the Vosses] are entitled to injunctive relief." *Id.* The court explained:

> Some fundamental principles applicable to a request for an injunction must be considered. (1) The proceeding is equitable and addressed to the sound discretion of the trial court. (2) The trial court is vested with a broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it. Appellate courts give great weight to the trial court's exercise of that discretion. (3) One of the essential criteria for injunctive relief is actual and substantial injury sustained by the person seeking the injunction.

*Id.* at 372-73 (emphasis omitted). Applying these considerations to the case, the Supreme Court affirmed the trial court's denial of an injunction as a sound exercise of its broad discretion. *Id.* at 373.

This case is only somewhat similar to *Brown v. Voss*. The Keevys' use of the NWL easement would burden the easement with one additional user, which is not much. But there is nothing yet that would prohibit the Keevys from obtaining an expanded or additional access easement for some or all of their other adjoining parcels. The trial court in *Brown v. Voss* limited the expansion of the use. *Id*. at 369-70.

16

This case is also different from *Brown v. Voss*.  Here, Mr. Hughes gave a prompt verbal warning to Mr. Keevy, followed by formal written warnings.  These warnings allowed the Keevys to weigh the risks before moving forward with their project.

In addition to these considerations, the trial court might consider the views of the other easement owners—whether they support or oppose an expansion of the easement.  Further equitable considerations include whether the Keevys are willing to have their parcel bound by a road maintenance agreement and whether they purchased their parcels at a discount because there was no developed access to the public road.

## CONCLUSION

This appeal is neither appealable as of right nor is it subject to discretionary review.  But neither the trial court's order nor our denial of review portends a broad injunction.  We remand for trial[3] so the lower court can consider evidence and enter findings of fact so as to properly exercise its broad discretionary power to craft an appropriate injunction.

---

[3] *See Borton & Sons, Inc. v. Burbank Props.*, 9 Wn. App. 2d 599, 605 n.1, 444 P.3d 1201 (2019), *aff'd*, 196 Wn.2d 199, 471 P.3d 871 (2020) (A trial court exercising equitable powers should order final relief only after a trial, so that the equitable remedy is supported by appropriate findings of fact.).

No. 39024-1-III
*Hughes v. Keevy*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Pennell, J.                        Cooney, J.

18

# Appendix A

